**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ILLINOIS BANKERS ASSOCIATION
et. al,

       Plaintiffs,

v.

KWAME RAOUL, in his official capacity as
Illinois Attorney General,

       Defendant.

No. 24 C 7307

Honorable Virginia M. Kendall

## THE ATTORNEY GENERAL'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

R. Douglas Rees
Alex Hemmer
Darren Kinkead
Office of the Attorney General
115 South LaSalle Street
Chicago, IL 60603

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

I.     Plaintiffs' new theories about the Attorney General's enforcement authority still do not satisfy the *Ex parte Young* exception to sovereign immunity. ................................ 2

     A.     The Attorney General cannot enforce the Interchange Fee Prohibition using his statutory authority to institute actions necessary for the execution of other officers' duties. ........................................................................... 2

     B.     Plaintiffs' arguments about the Attorney General's common law powers do not establish either that he is "clothed with some duty in regard to the enforcement of the" Interchange Fee Prohibition or that he has "threaten[ed] and [is] about to commence proceedings." ....................................... 3

          1.     Plaintiffs have not established that the Attorney General's common law powers allow him to enforce the Interchange Fee Prohibition. ........... 4

          2.     Plaintiffs have not established that the Attorney General is threatening to enforce the Interchange Fee Prohibition. ............................ 7

II.     Enjoining just one of many potential enforcers of the Interchange Fee Prohibition will not relieve plaintiffs' members of the need to prepare to comply with it. ................... 8

III.     Plaintiffs still have not shown the Data Usage Limitation actually covers their members' desired conduct. ............................................................................................... 12

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*520 Michigan Avenue Associates, Ltd. v. Devine*,
433 F.3d 961 (7th Cir. 2006) ........................................................................... 9

*Arizona Christian School Tuition Organization v. Winn*,
563 U.S. 125 (2011) ........................................................................................ 9

*Association for Accessible Medicines v. Raoul*,
No. 24 C 544 (N.D. Ill. June 18, 2024), ECF 32 ......................................... 12

*Babbitt v. United Farm Workers National Union*,
442 U.S. 289 (1979) ................................................................................. 14, 15

*Ball v. Madigan*,
245 F. Supp. 3d 1004 (N.D. Ill. 2017) ........................................................... 3

*Bazile v. Finance System of Green Bay, Inc.*,
983 F.3d 274 (7th Cir. 2020) ........................................................................11

*Bosarge v. Edney*,
669 F. Supp. 3d 598 (S.D. Miss. 2023) ........................................................... 7

*Brown v. Kemp*,
86 F.4th 745 (7th Cir. 2023) ......................................................................... 12

*California v. Texas*,
593 U.S. 659 (2021) ........................................................................................ 8

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ................................................................................. 9, 15

*Cook County ex rel. Rifkin v. Bear Stearns & Co.*,
831 N.E.2d 563, 215 Ill. 2d 466 (2005) ........................................................ 5

*Doe v. Holcomb*,
883 F.3d 971 (7th Cir. 2018) ...................................................................... 4, 7

*Doyle v. Hogan*,
1 F.4th 249 (4th Cir. 2021) ............................................................................ 6

*Entertainment Software Association v. Blagojevich*,
469 F.3d 641 (7th Cir. 2006) ......................................................................... 9

*Ex parte Young,*
    209 U.S. 123 (1908)............................................................................................... 4, 7

*FDA v. Alliance for Hippocratic Medicine,*
    602 U.S. 367 (2024)................................................................................................. 15

*First National Bank of Hoffman Estates v. Fabbrini,*
    627 N.E.2d 356, 255 Ill. App. 3d 99 (1st Dist. 1993)............................................ 3

*Fisher v. Lexington Health Care, Inc.,*
    722 N.E.2d 1115, 188 Ill. 2d 455 (1999) ............................................................. 12

*Heckler v. Chaney,*
    470 U.S. 821 (1985)............................................................................................... 14

*Indiana Right to Life Victory Fund v. Morales,*
    112 F.4th 466 (7th Cir. 2024)................................................................................ 15

*Indiana Right to Life Victory Fund v. Morales,*
    66 F.4th 625 (7th Cir. 2023)................................................................... 12, 14, 15

*K.P. v. LeBlanc,*
    627 F.3d 115 (5th Cir. 2010) .................................................................................. 8

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024)................................................................................. 7

*Minnesota RFL Republican Farmer Labor Caucus v. Freeman,*
    33 F.4th 985 (8th Cir. 2022)................................................................................... 7

*Missouri v. Yellen,*
    39 F.4th 1063 (8th Cir. 2022)............................................................................... 14

*National Shooting Sports Foundation v. Attorney General,*
    80 F.4th 215 (3d Cir. 2023).................................................................................. 14

*Parents Protecting Our Children, UA v. Eau Claire Area School District,*
    95 F.4th 501 (7th Cir. 2024)................................................................................. 12

*People ex rel. Alvarez v. Gaughan,*
    72 N.E.3d 276, 2016 IL 120110............................................................................ 5

*People ex rel. Barrett v. Finnegan,*
    38 N.E.2d 715, 378 Ill. 387 (1941) ....................................................................... 4

*People ex rel. Devine v. Time Consumer Marketing, Inc.*,
    782 N.E.2d 761, 336 Ill. App. 3d 74 (1st Dist. 2002) ........................................................ 6

*People v. Buffalo Confectionery Co.*,
    401 N.E.2d 546, 78 Ill. 2d 447 (1980) ................................................................................ 5

*People v. Hanna*,
    800 N.E.2d 1201, 207 Ill. 2d 486 (2003) ........................................................................ 13

*Sherman v. Community Consolidated School District 21*,
    980 F.2d 437 (7th Cir. 1992) ......................................................................................... 1, 6

*Sierakowski v. Ryan*,
    No. 98 C 7088, 1999 WL 286290 (N.D. Ill. Apr. 27, 1999) ............................................ 4

*Sierra Club v. Franklin County Power of Illinois, LLC*,
    546 F.3d 918 (7th Cir. 2008) .............................................................................................. 8

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ............................................................................................ 11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................................... 14

*Sweeney v. Raoul*,
    990 F.3d 555 (7th Cir. 2021) .............................................................................................. 9

*Texas Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) .............................................................................................. 4

*Unified Data Services, LLC v. FTC*,
    39 F.4th 1200 (9th Cir. 2022) .......................................................................................... 14

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020) ........................................................................................................... 6

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ......................................................................................................... 6, 7

*Whole Woman's Health v. Jackson*,
    141 S. Ct. 2494 (2021) ....................................................................................................... 9

**Statutes**

10 ILCS 5/9-23 ................................................................................................................. 3

15 ILCS 205/4................................................................................................................ 2, 5

55 ILCS 5/3-9005 ....................................................................................................... 3, 5, 8

815 ILCS 151/150-15 ...........................................................................2, 4, 5, 8, 11, 13

815 ILCS 505/7............................................................................................................ 2, 4

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................11

## INTRODUCTION

Plaintiffs insist "this is a routine pre-enforcement challenge." ECF 93 at 1. It's anything but. The IFPA, which won't come into effect for almost nine months, is a modest effort by the Illinois legislature to rein in a portion of the fees charged by credit and debit card issuers for processing transactions made by Illinois consumers. Plaintiffs' response, on the other hand, is extraordinary. Imagining that a single knockout punch will get them everything they want, they launched sprawling litigation demanding that the Court immediately enjoin enforcement of the Act against every entity participating in electronic payment transactions—including those they now concede are beyond the Court's power or the scope of their claims. *E.g.,* *id.* at 5, 16-17. And all this without establishing that the Attorney General even has authority, and intends to use it, to enforce the provision they primarily attack: the Interchange Fee Prohibition. *See Sherman v. Community Consolidated School District 21*, 980 F.2d 437, 441 (7th Cir. 1992) (admonishing plaintiffs for suing the Attorney General as a stand-in for the State of Illinois).

Plaintiffs' latest filing confirms their claims must be dismissed. Although they belatedly point to the Attorney General's common law powers as a possible means of enforcing the Interchange Fee Prohibition, they cite no precedent showing that those powers have been interpreted to allow recovery of civil penalties under circumstances like these. At most this suggests an abstract possibility that the Attorney General could institute an enforcement action, which is not enough to satisfy the *Ex parte Young* exception to sovereign immunity. More fundamentally, plaintiffs' lack of Article III standing poses a threshold barrier. The relief plaintiffs seek—an injunction against the Attorney General's enforcement of the Interchange Fee Prohibition—won't redress the injury they claim their members are suffering—incurring costs now to prepare for compliance next July—because it won't stop enforcement of the provision by

1

others who do have that authority. As for plaintiffs' challenge to the Data Usage Limitation, the problem is the lack of any injury; they still have not shown that the provision covers their members' conduct. For these reasons and more, all claims should be dismissed.

## I.    Plaintiffs' new theories about the Attorney General's enforcement authority still do not satisfy the *Ex parte Young* exception to sovereign immunity.

Sovereign immunity is hardly an obscure doctrine. It's usually one of the first issues addressed by any plaintiff who pursues an official-capacity suit against a state officer in federal court. But for plaintiffs, apparently, it is an afterthought. Their complaint, ECF 1, ¶ 42, carelessly contends the Attorney General can enforce both IFPA provisions—the Interchange Fee Prohibition and the Data Usage Limitation—through section 7(a) of Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a). In fact, this is true only of the Data Usage Limitation. 815 ILCS 151/150-15(b). Their preliminary injunction motion is scarcely an improvement; it gestures broadly at section 4 of the Attorney General Act, 15 ILCS 205/4, and insists (without elaboration) that the statute contains some "general enforcement powers" encompassing the Interchange Fee Prohibition, ECF 24 at 14. In fact, the statute enumerates 15 specific duties of the Attorney General, none of which is applicable here. ECF 76 at 5-6.

### A.    The Attorney General cannot enforce the Interchange Fee Prohibition using his statutory authority to institute actions necessary for the execution of other officers' duties.

Plaintiffs seem to concede they've struck out with their initial attempts at cracking sovereign immunity, for their latest filing abandons these efforts in favor of two entirely new theories. Start with the Attorney General Act. Plaintiffs now say, ECF 93 at 5, that the Attorney General can enforce the Interchange Fee Prohibition through his general duty "[t]o institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer," 15 ILCS 205/4 (second). The

problem with this approach is the subordinate clause: who are these state officers who supposedly need the Attorney General's assistance? Plaintiffs suggest that state's attorneys would benefit from the Attorney General's filing enforcement "actions in tandem with them." ECF 93 at 5. But this is doubly unsound. State's attorneys (none of whom plaintiffs have named as defendants) have their own authority to pursue civil penalties for violations of the Interchange Fee Prohibition. 55 ILCS 5/3-9005(a)(2); *see* ECF 76 at 5-6, 9-10. Thus, state's attorneys, not the Attorney General, would "prosecute" such actions. And duplicative lawsuits by the Attorney General seeking the same civil penalties would not aid the state's attorneys in the execution of their authority but rather would be redundant and "perpetuate[ ] a multiplicity of action, [would be] contrary to the orderly administration of justice, and [would] do[ ] nothing to contribute to the cause of judicial economy in an already overburdened court system." *First National Bank of Hoffman Estates v. Fabbrini*, 627 N.E.2d 356, 359, 255 Ill. App. 3d 99, 102-03 (1st Dist. 1993).

The case plaintiffs cite—*Ball v. Madigan*, 245 F. Supp. 3d 1004 (N.D. Ill. 2017)—shows what this statutory authority is really getting at. The Illinois Board of Elections can conduct administrative proceedings in which it imposes civil penalties on people who violate the Election Code. *Id.* at 1017 (citing 10 ILCS 5/9-23). Those penalties are enforceable in court. *Id.* But the board lacks authority to initiate litigation. *Id.* So it needs the Attorney General "[t]o institute and prosecute" a lawsuit, which will be "for the use of the State" and "necessary in the execution of the [board members'] duties." 15 ILCS 205/4 (second). Those circumstances aren't present here.

### B. Plaintiffs' arguments about the Attorney General's common law powers do not establish either that he is "clothed with some duty in regard to the enforcement of the" Interchange Fee Prohibition or that he has "threaten[ed] and [is] about to commence proceedings."

Plaintiffs turn next to what they describe as the Attorney General's "common-law powers to pursue [civil] penalties." ECF 93 at 5. This argument may cause the Court to experience a

3

sense of déjà vu. As they did originally with the Attorney General Act, plaintiffs simply point to a broad swath of authority and insist (without much explanation) that there must be something in there allowing the Attorney General to enforce the Interchange Fee Prohibition. The argument fails for two reasons: First, plaintiffs have not established that the Attorney General's common law powers allow him to enforce the Interchange Fee Prohibition. Second, plaintiffs have not established that the Attorney General is threatening to do so; to the contrary, he disavows any present intention to enforce the Interchange Fee Prohibition's civil penalty provision.

> **1.** **Plaintiffs have not established that the Attorney General's common law powers allow him to enforce the Interchange Fee Prohibition.**

Plaintiffs' first problem is that the *Ex parte Young* exception to sovereign immunity requires more than an abstract principle like "'[the Attorney General] may institute, conduct and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State.'" ECF 93 at 3 (quoting *People ex rel. Barrett v. Finnegan*, 38 N.E.2d 715, 717, 378 Ill. 387, 393 (1941)). After all, "'a general duty to enforce state laws does not make [a state officer] a proper defendant in every action attacking the constitutionality of a state statute.'" *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018); *see* *Sierakowski v. Ryan*, No. 98 C 7088, 1999 WL 286290, at *2 (N.D. Ill. Apr. 27, 1999) (applying this principle to Illinois attorney general); *Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) (same to Texas attorney general). Plaintiffs must show the Attorney General's common law powers allow him to enforce the Interchange Fee Prohibition in particular. *Ex parte Young*, 209 U.S. 123, 161 (1908) (Minnesota attorney general's "power existing at common law" included right to enforce "act in question").

Plaintiffs have failed to do so. Critically, although the IFPA gives the Attorney General power to enforce the Data Usage Limitation as a violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 151/150-15(b), it does not give him similar power to enforce

4

the Interchange Fee Prohibition, *id.* 150-15(a). Further, although 55 ILCS 5/3-9005(a)(2) expressly empowers state's attorneys to recover civil penalties, 15 ILCS 205/4 provides no such authority to the Attorney General.

It is true, as a general matter, that the Illinois constitution "grant[s] the Attorney General all the powers associated with that office at common law." *People ex rel. Scott v. Briceland*, 359 N.E.2d 149, 153, 156, 65 Ill. 2d 485, 493, 500 (1976). But it also grants state's attorneys powers that "are analogous to and largely coincident with those of the Attorney General." *Cook County ex rel. Rifkin v. Bear Stearns & Co.*, 831 N.E.2d 563, 570, 215 Ill. 2d 466, 478 (2005). And the Illinois legislature has conferred on the Attorney General and state's attorneys, respectively, primary authority to act in certain areas. *See, e.g., People ex rel. Alvarez v. Gaughan*, 72 N.E.3d 276, 286-87, 2016 IL 120110, ¶ 30 (recognizing that, in cases before the Illinois Supreme Court, Attorney General has authority to "'represent the people of the State . . . in all cases in which the State or the people of the State are interested'" and state's attorneys have more limited authority to "'assist the attorney general'"); *People v. Buffalo Confectionery Co.*, 401 N.E.2d 546, 549, 78 Ill. 2d 447, 454-55 (1980) (recognizing that, except as provided in specific statutes, state's attorneys have primary authority to initiate and prosecute criminal actions in Illinois circuit courts and the Attorney General is authorized only to "'attend . . . and assist'").

Thus, the constitutional common law powers historically exercised by the Attorney General are sometimes exercised not by him but rather by state's attorneys. And these authorities, as well as plaintiffs' failure to point to any authority specifically addressing the Attorney General's recovery of penalties under similar circumstances, show that they have not sustained their burden of establishing that the Attorney General may do so for the Interchange Fee Prohibition's civil penalty provision.

Plaintiffs complain that the Attorney General is acting "coyly" by declining to say whether he has authority to enforce the Interchange Fee Prohibition. ECF 93 at 5; *see* ECF 76 at 6 (acknowledging he "may have discretion to enforce the Interchange Fee Prohibition's civil penalty"). But no clear answer exists; the scope of the Attorney General's common law powers, and his relationship with state's attorneys, involve complex questions of Illinois law. *See, e.g., Scott*, 359 N.E.2d at 156, 65 Ill. 2d at 499 (recognizing "confusion among the delegates" at Illinois's 1970 constitutional convention on scope of common law powers); *People ex rel. Devine v. Time Consumer Marketing, Inc.*, 782 N.E.2d 761, 767, 336 Ill. App. 3d 74, 82 (1st Dist. 2002) ("It seems that no court has undertaken to define the full scope of duties or powers associated with the office of attorney general at common law."). Regardless, it is plaintiffs' burden to show the Attorney General can enforce the Interchange Fee Prohibition, not the Attorney General's burden to show he can't. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021); *Doyle v. Hogan*, 1 F.4th 249, 257 (4th Cir. 2021).

Plaintiffs do not deny they bear this burden but downplay its significance by suggesting that the Court should "simply answer the yes-or-no question whether the AG has enforcement authority." ECF 93 at 6 n.2. This is inconsistent with *Whole Woman's Health*, where the Supreme Court decided not whether the Texas attorney general could enforce the challenged law but rather whether plaintiffs had shown he could. 595 U.S. at 43; *see Sherman*, 980 F.2d at 441 ("as far as we can tell [Illinois attorney general] has no authority to" enforce challenged law). It is also inconsistent with the principle that parties "'are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

### 2. Plaintiffs have not established that the Attorney General is threatening to enforce the Interchange Fee Prohibition.

Plaintiffs' bid to satisfy the *Ex parte Young* exception to sovereign immunity falls short for an additional reason. It is not enough for them to show the Attorney General is "clothed with some duty in regard to the enforcement of the" Interchange Fee Prohibition; they must also show he has "threaten[ed] and [is] about to commence proceedings." 209 U.S. at 156. This cannot be accomplished merely by asking a resourceful lawyer to work up a plausible argument that the Attorney General possesses such authority as a conceptual matter. All that establishes is "the abstract possibility of an enforcement action," which is too remote for the *Ex parte Young* exception. *Whole Woman's Health*, 595 U.S. at 47; *see Bosarge v. Edney*, 669 F. Supp. 3d 598, 623 (S.D. Miss. 2023) (Mississippi attorney general's common law powers provide no "indication that [he] plays any role in the actual enforcement of" challenged law).

In any event, the Attorney General can assure plaintiffs and the Court that he has no present intention to enforce the Interchange Fee Prohibition. And those assurances are conclusive. The *Ex parte Young* exception applies only if the state officer has "'enforced [or] threatened to enforce the allegedly unconstitutional state statute.'" *Doe*, 883 F.3d at 977. A state officer who disavows any present intention to enforce the challenged law establishes definitively that the *Ex parte Young* exception is off the table. *Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022); *see Mi Familia Vota v. Ogg*, 105 F.4th 313, 330-31 (5th Cir. 2024). Thus, sovereign immunity bars plaintiffs' claims against the Interchange Fee Prohibition.[1]

---

[1] Sovereign immunity also bars plaintiffs' claims under Illinois law. ECF 76 at 6-7. Plaintiffs concede this but are chagrined the Attorney General didn't take the unusual step of waiving sovereign immunity to allow those claims to proceed in federal court. ECF 93 at 5. If this is a problem, it is of plaintiffs' own making. They could have filed this suit in state court and avoided sovereign immunity altogether.

## II. Enjoining just one of many potential enforcers of the Interchange Fee Prohibition will not relieve plaintiffs' members of the need to prepare to comply with it.

Article III's causation and redressability requirements pose another insurmountable hurdle for plaintiffs' Interchange Fee Prohibition claims. The basic problem is that plaintiffs have not shown that the Attorney General can enforce that provision. This is their burden under Article III just as it is under *Ex parte Young*. And their failure to carry it produces the same fatal results. *E.g., California v. Texas*, 593 U.S. 659, 670-73 (2021).

Plaintiffs fail to establish this standing element even if one assumes the Attorney General's common law powers allow him to recover civil penalties for violations of the Interchange Fee Prohibition. Plaintiffs don't deny that the 102 independently elected state's attorneys have the same authority. *See* 55 ILCS 5/3-9005(a)(2). But they insist it doesn't matter because, under Article III, it is enough for a favorable judgment to "'reduce the probability' of injury," and enjoining enforcement of the Interchange Fee Prohibition by one of the 103 potential actors theoretically reduces the odds plaintiffs' members will face an enforcement action. ECF 93 at 8 (quoting *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 927-28 (7th Cir. 2008)).

The Attorney General has no quibble with this, so far as it goes. The argument doesn't establish plaintiffs' standing, however, because it redresses an injury—the risk of facing a civil penalty—different from the one they've invoked—the need to incur expenses to prepare for implementation. If plaintiffs' injury was the risk their members could be hit with a $1,000 civil penalty under 815 ILCS 151/150-15(a) for every violation of the Interchange Fee Prohibition, then, as the Attorney General acknowledged, redressability might be satisfied even though plaintiffs sued only him but none of Illinois's state's attorneys. ECF 76 at 10-11 & n.2. Reducing risk is sometimes enough. *E.g., K.P. v. LeBlanc*, 627 F.3d 115, 123-24 (5th Cir. 2010) (state

8

agency's refusal to allow abortion providers' participation in malpractice scheme was redressable injury even though some litigants could still choose to bypass agency and proceed in court).[2]

But this is not the injury plaintiffs have invoked as a basis to seek relief against the Attorney General, so it does not satisfy their burden to establish standing under Article III. The Supreme Court "ha[s] repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (cleaned up). Actions to recover civil penalties under the Interchange Fee Prohibition are not "certainly impending"; the Attorney General has not "taken even a single step along the path to enforcement," *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021), not only because it is unclear whether he has authority to do so, but also because the Act does not become effective for months, 815 ILCS 151/999-99. If plaintiffs' claimed injury as the basis for seeking immediate relief were the risk of hypothetical enforcement actions in the distant future, they would be booted out of federal court on that basis alone.[3]

Apparently recognizing this problem, plaintiffs point to a different injury—the costs their members are incurring today to prepare for the Act's effective date next July. *E.g.,* ECF 1, ¶ 97

---

[2] Although plaintiffs cite *Entertainment Software Association v. Blagojevich*, 469 F.3d 641, 645 (7th Cir. 2006), the case does not address Article III standing and therefore is not precedent on those issues. *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 144-45 (2011).

[3] *520 Michigan Avenue Associates, Ltd. v. Devine*, 433 F.3d 961 (7th Cir. 2006), is not to the contrary. The law challenged there was in effect, and the state was investigating plaintiff for violations. *Id.* at 962. The court held plaintiff's risk of prosecution was imminent, even though no criminal case was looming, because "[s]tanding depends on the probability of harm, not its temporal proximity." *Id.* at 962-63. Here, by contrast, the challenged law is not in effect, there is uncertainty about whether the Attorney General is authorized to enforce it, and he has not "taken even a single step along the path to enforcement," *Sweeney*, 990 F.3d at 560. Any "theory of *future* injury" caused by civil penalties the Attorney General may never seek "is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper*, 568 U.S. at 401; *see Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (suggesting injury is not "certainly impending" when "it is unclear whether the named defendants in this lawsuit can or will seek to enforce the [challenged] law").

("financial institutions will have to invest hundreds of thousands to tens of millions of dollars *no later than the next few months* to attempt to rebuild the systems and processes from the ground up to comply with the IFPA's novel requirements"); ECF 24 at 15 ("the short time period before the IFPA's effective date means that costly measures needed to attempt to comply must begin imminently"); ECF 93 at 1-2 ("Plaintiffs' injuries are mounting *now*" because the Act is "imposing costs on Plaintiffs' members as they attempt to come into compliance in time for its effective date"). The Attorney General doesn't dispute that this qualifies as a cognizable Article III injury.[4] What he does dispute, however, is that this injury is redressable by the relief plaintiffs now seek only against the Attorney General. ECF 76 at 9-11.

Plaintiffs' own words show it isn't. They complain of expenses they will incur if the Interchange Fee Prohibition is "allowed to take effect." ECF 93 at 1. But there is a serious mismatch between that eventuality and the limited relief they seek against the Attorney General, which, even if granted, won't prevent that provision from taking effect. Plaintiffs say the threat of civil penalties for violating the Interchange Fee Prohibition is "causing members to incur irreparable harm on a daily basis as they attempt to come into compliance" and these "injuries will be alleviated" only when those members "no longer need to comply with the IFPA." *Id.* at 6. But that won't result from an order enjoining enforcement of the Interchange Fee Prohibition by the Attorney General alone. Despite what they say, plaintiffs' members will still "need to comply with the IFPA" because all of Illinois's state's attorneys, who are not defendants and won't be bound by any judgment in this case, will still be able to pursue civil penalties for every Illinois

---

[4] Unlike the preparations plaintiffs' members are undertaking to comply with the Data Usage Limitation, *see infra* at 15, these preparations are sufficient to make out an Article III injury because there's no question that the Interchange Fee Prohibition covers the desired conduct of plaintiffs' members—and at the very least state's attorneys will be able to enforce the prohibition (and probably merchants too).

credit and debit card transaction in which an interchange fee is charged on tax or gratuity. *Id.* And under plaintiffs' own logic, that threat will cause their members to continue incurring costs to come into compliance, regardless of any order against the Attorney General. *Id.* The evidence plaintiffs have submitted does not show that their members are incurring expenses to upgrade their systems due to potential enforcement actions by the Attorney General alone. Nor is it plausible that this would be the only reason they would do so. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (plausibility standard applies to Rule 12(b)(1) motions).

Plaintiffs chide the Attorney General for failing to submit "actual evidence" of their members' intentions "that this Court could weigh against Plaintiffs' sworn statements." ECF 93 at 9. But, as explained, it is plaintiffs' evidence that proves the Attorney General's point. *See Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (court deciding Rule 12(b)(1) motion "may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action").[5]

Beyond that, there are many potential enforcers of the Interchange Fee Prohibition other than just Illinois's Attorney General and state's attorneys. Plaintiffs' members must refund merchants any interchange fee charged on tax or gratuity. 815 ILCS 151/150-15(a). This additional liability is another reason why it makes no sense for those members to stop preparing for compliance even if the Attorney General is enjoined. Plaintiffs barely dispute this; they merely protest "[i]t is far from clear that merchants have an implied right of action under the IFPA." ECF 93 at 9 n.4. But they ignore most of the factors the Illinois Supreme Court considers

---

[5] Plaintiffs insist a declaration from an American Bankers Association official proves an injunction against the Attorney General alone would suffice to remedy his members' injuries. ECF 93 at 9. But the official actually says that "investments by the ABA's members towards complying with the IFPA would be wasted" only if the statute "ultimately does not go into effect." ECF 24-2, ¶ 32. In other words, the costs of compliance are necessary so long as the IFPA is enforceable by anyone. The same assertion is repeated (sometimes almost verbatim) by several other declarants. *E.g.,* ECF 24-3, ¶ 26; ECF 24-4, ¶ 18.

when evaluating this question. Merchants are "the class for whose benefit the statute was enacted." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18, 188 Ill. 2d 455, 460 (1999). Paying an interchange fee on tax and gratuity is what "the statute was designed to prevent." *Id.* And the Act itself says merchants are entitled to a refund under these circumstances, so recognizing their right to bring an action to recover that refund is "consistent with the underlying purpose of the statute." *Id.*

In sum, plaintiffs have not satisfied their burden to establish Article III standing by showing their members' asserted injury—having to prepare to comply with the Interchange Fee Prohibition—will be eliminated by an order prohibiting the Attorney General alone from enforcing it.

## III.   Plaintiffs still have not shown the Data Usage Limitation actually covers their members' desired conduct.

Plaintiffs also lack Article III standing to pursue their Data Usage Limitation claims. As the Court recently reminded other litigants who launched a "sweeping pre-enforcement facial" challenge to an Illinois law "as the ink was still drying," *Parents Protecting Our Children, UA v. Eau Claire Area School District*, 95 F.4th 501, 506 (7th Cir. 2024), plaintiffs must show their "members intend to violate the [Data Usage Limitation] in a manner that is proscribed by the Act," Order at 3, *Association for Accessible Medicines v. Raoul*, No. 24 C 544 (N.D. Ill. June 18, 2024), ECF 32 (Kendall, J.). And the Seventh Circuit agrees: "It is a threshold requirement to establish a credible threat of enforcement that the statute actually cover the plaintiff's desired conduct." *Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625, 630 (7th Cir. 2023).

What does it take to satisfy this requirement? At the very least, plaintiffs must describe what their members wish to do and show how those actions fall within the scope of the Data Usage Limitation. *E.g.*, *Brown v. Kemp*, 86 F.4th 745, 762-64 (7th Cir. 2023). Plaintiffs have

never done this; they have not even tried. Their descriptions of their members' desired conduct are conclusory and incomplete. And they offer no statutory analysis to explain why they think this conduct could land them in trouble. *Contra* ECF 76 at 13-14 (explaining how the plain language of the Act may prohibit a narrower range of conduct than plaintiffs assume). Incredibly, some of plaintiffs' members concede that their desired conduct may not even be covered by the Data Usage Limitation. *E.g.,* ECF 24-9, ¶ 25; ECF 24-12, ¶ 58.

To see how plaintiffs fall short, consider the two examples provided in their latest filing. One member uses electronic payment transaction data generally to "'assess and avoid authorizing fraudulent transactions'"—which plaintiffs say goes "beyond" the Data Usage Limitation's exception for "processing" a particular "transaction." ECF 93 at 10 (quoting ECF 24-12, ¶ 57). Maybe so. But this use appears to fall within a different exception for "facilitat[ing]" transactions. 815 ILCS 151/150-15(b); *see* ECF 76 at 13 & n.4 (explaining that facilitate means "to make (something) easier," "to help bring (something) about," "to help (something, such as a discussion) run more smoothly and effectively"). Plaintiffs suggest this exception might apply only if the use specifically facilitates the transaction at issue. ECF 93 at 15. But they have no response to the Attorney General's point that interpreting a consumer-protection statute to ban antifraud efforts is an absurd construction Illinois courts are likely to reject. *See, e.g., People v. Hanna,* 800 N.E.2d 1201, 1207-09, 207 Ill. 2d 486, 498-500 (2003).

Plaintiffs note that another member uses data for "'analysis of [its] overall business, acquisition and attrition trending,' and 'financial reporting.'" ECF 93 at 10 (quoting ECF 24-11, ¶¶ 34-35). That's a little cryptic, to say the least; presumably this member isn't reporting on its Form 10-K that Jane Smith of Carbondale spent $20 at Starbucks last Tuesday. If what the member means is it uses electronic payment transaction data in the aggregate to make business

decisions about its credit and debit card products, then that too might fall within the "facilitating transactions" exception. Either way, plaintiffs cannot evade the "threshold requirement" to show the Data Usage Limitation "actually cover[s]" their members' "desired conduct" with vague and conclusory arguments that do not connect specific conduct with clear statutory proscriptions. *Indiana Right to Life*, 66 F.4th at 630; *see Unified Data Services, LLC v. FTC*, 39 F.4th 1200, 1210-11 (9th Cir. 2022) (pre-enforcement challengers must provide "'some degree of concrete detail'" about how they "'intend to violate'" statute, including "'when, to whom, where, or under what circumstances'").[6]

Plaintiffs instead try to flip the script. They tell the Court "a pre-enforcement challenge can proceed" so long as "'the State has not disavowed any intention of invoking' the penalties in question." ECF 93 at 9 (quoting *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302 (1979)); *see id.* (claiming the Attorney General's failure to "affirmatively assur[e] Plaintiffs that they will not be subject to penalties for this activity . . . is fatal to [his] argument"). But plaintiffs cannot require the Attorney General to provide advisory opinions on broad and ill-defined categories of conduct by the simple expedient of filing a pre-enforcement challenge against him. Enforcement authority is inherently discretionary and often involves consideration of multiple factors, including a close analysis of statutory text and particular circumstances. *Heckler v. Chaney*, 470 U.S. 821, 832-32 (1985). And for standing purposes, the government's enforcement intentions become relevant only after plaintiffs satisfy the "threshold requirement" to establish "that the statute actually cover[s] [their members'] desired conduct." *Indiana Right*

---

[6] Plaintiffs say the Attorney General, disregarding Supreme Court precedent, "put[s] the burden on [them] to prove their members will violate the statute." ECF 93 at 10 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014)). Not so. "[A]lthough a plaintiff generally need not confess that he will in fact violate a law in order to challenge it, a plaintiff must still allege an intention to engage in a course of conduct proscribed by a statute." *Missouri v. Yellen*, 39 F.4th 1063, 1069 (8th Cir. 2022) (cleaned up); *see National Shooting Sports Foundation v. Attorney General*, 80 F.4th 215, 221 (3d Cir. 2023) (same).

*to Life*, 66 F.4th at 630; *see, e.g.*, *Babbitt*, 442 U.S. at 301-02; *Indiana Right to Life Victory Fund v. Morales*, 112 F.4th 466, 470 (7th Cir. 2024). Put differently, "Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024). Plaintiffs haven't done so.

Never mind, plaintiffs say; their "members are *already incurring* compliance costs" because of "the preparations required *now*," and that is injury enough for Article III. ECF 93 at 10-11. It's not. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. And because plaintiffs haven't shown that the Data Usage Limitation "actually cover[s]" their members' "desired conduct," *Indiana Right to Life*, 66 F.4th at 630, the possibility that the Attorney General might someday interpret the statute to cover particular actions by one of plaintiffs' members and decide to enforce it against that member is just that: hypothetical future harm that is not certainly impending and therefore is insufficient to establish standing.

## CONCLUSION

For all these reasons, the Court should dismiss the complaint, ECF 1.


Dated: October 18, 2024                     Respectfully submitted,

                                             /s/ Darren Kinkead
                                            R. Douglas Rees
                                            Alex Hemmer
                                            Darren Kinkead
                                            Office of the Attorney General
                                            115 South LaSalle Street
                                            Chicago, IL 60603
                                            (773) 590-6967
                                            Darren.Kinkead@ilag.gov