THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BANKERS ASSOCIATION et al. | ) ) ) No. 24 7307 ) ) Chief Judge Virginia M. Kendall ) ) ) ) ) ) |
| *Plaintiffs*, v. KWAME RAOUL, in his official capacity as Illinois Attorney General, *Defendant*. | |

**OPINION AND ORDER**

Before the Court are the remaining claims in Plaintiffs'[1] Illinois Bankers et al.'s Motion for Preliminary Injunction. (Dkt. 15). On December 20, 2024, the Court granted, in part, Illinois Bankers' preliminary injunction motion. (Dkt. 104). The Court, however, reserved judgment on two claims, requesting supplemental briefing regarding the Court's jurisdiction. For reasons below, the Court grants, in part, Plaintiffs' Motion for Preliminary Injunction [15] with respect to the remaining two claims.

**BACKGROUND**

The Court assumes familiarity with its December 20, 2024, Order, granting in part, Plaintiffs' Motion for Preliminary Injunction. (Dkt. 104). The injunction concerns the Illinois Interchange Fee Prohibition Act ("IFPA"). (Dkt. 24 at 1); 815 ILCS 151/150-1 *et seq*. The IFPA, which is scheduled to take effect July 1, 2025, will limit (i) the amount financial institutions can charge in interchange fees and (ii) how companies can use consumer data. (*Id*.)

---

[1] The other Plaintiffs are the American Bankers Association, America's Credit Unions, the Illinois Credit Union League, and the Illinois Retail Merchants Association.

1

In its December 2024 Order, the Court determined that several applications of the IFPA were likely preempted by federal law, and consequently partially granted Plaintiffs' preliminary injunction motion. (Dkt. 104 at 37). The Court reserved judgment on two of Illinois Bankers's claims—that the Federal Credit Union Act ("FCUA") and 12 U.S.C. §1831a(j) preempted certain applications of the IFPA—and requested supplemental briefing from the parties to confirm the Court's jurisdiction. (Dkt. 104 at 37); 815 ILCS 151/150-1 *et seq*.

Though the State did not raise a jurisdictional challenge to Illinois Bankers' Motion, the Court has an independent obligation to assure itself of its jurisdiction. *See e.g. Baez-Sanchez v. Sessions*, 862 F.3d 638, 641 (7th Cir. 2017). The Court has considered the issue and has concluded that it has jurisdiction. (Dkt. 110). In its review, the Court determined that Plaintiffs' arguments—that the FCUA and 12 U.S.C. § 1831a(j) preempt the IFPA—fit within the *Ex parte Young* framework, which provides an equitable cause of action to enjoin unconstitutional actions by state officers. 209 U.S. 123 (1908); *see also Restoration Risk Retention Grp., Inc. v. Gutierrez*, 880 F.3d 339, 346 (7th Cir. 2018) (writing that "if an individual claims federal law immunizes him from state regulation, the [federal] court may issue an injunction upon finding the state regulatory actions preempted.") (cleaned up). Accordingly, no separate private right of action under the FCUA or § 1831a(j) is required, and the Court has jurisdiction to adjudicate these claims.

The Court addresses the merits of Illinois Bankers's final two claims below.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Doe v. University of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Illinois Bankers must establish (1) "that [they] [are] likely to succeed on the merits," (2) "that [they] [are] likely to suffer irreparable harm in the absence of

preliminary relief," (3) "that the balance of equities tips in [their] favor, and" (4) "that an injunction is in the public interest." *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1324 (7th Cir. 2022) (quoting *Winter*, 555 U.S. at 20). Although Illinois Bankers need not demonstrate a likelihood of success by a preponderance of the evidence, they must "make a 'strong' showing that reveals how they propose to prove their case." *Id.* (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020)). A mere possibility or "better than negligible" chance of success is not enough. *Id.* (citations omitted). Analyzing the likelihood of success, the Seventh Circuit has stressed, is "often decisive." *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022).

Because Illinois Bankers's remaining claims do not impact the Court's previous analysis on irreparable harm, balancing equities, and the impact of granting an injunction on the public interest, the Court will examine only Illinois Bankers's likelihood of success on the merits with respect to their two remaining claims. The Court finds that Illinois Bankers have not shown a likelihood of success on the merits with respect to their FCUA claim but have met their burden with respect to their § 1831a(j) claim.

### I. Federal Credit Union Act

Illinois Bankers contend that the Federal Credit Union Act ("FCUA") preempts the IFPA as it applies to federal credit unions. (Dkt. 24 at 30). The FCUA authorizes federal credit unions to make contracts and loans and to issue lines of credit to its members. 12 U.S.C. §§ 1757(1), (5); 12 C.F.R. § 701.21. The Act "preempts any state law purporting to limit or affect" certain aspects of "Federal credit union loans and lines of credit (including credit cards) to members." 12 C.F.R. § 701.21(b).

Illinois Bankers claim that FCUA preempts the IFPA because the federal statute gives (i) the National Credit Union Administration (NCUA) "exclusive authority [...] to regulate the rates,

3

terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards) to members" and (ii) the "incidental power" to engage in data processing. (Dkt. 24 at 30–31); 12 C.F.R. §§ 701.21(a)–(e); *see also Nat'l Ass'n of State Credit Union Sup'rs v. Nat'l Credit Union Admin.*, 188 F.3d 228 (4th Cir. 1999) (affirming district court decision, which explained that the NCUA can promulgate preemptive regulations).

The *Barnett Bank* "significant interference" standard, which applied to some of Illinois Bankers' other claims, (Dkt. 104 at 16), does not govern here; instead, the issue turns on traditional preemption analysis. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996); *see Cantero v. Bank of Am., N. A.*, 602 U.S. 205, 213 (2024) (explaining that the *Barnett Bank* standard applies specifically to state laws that regulate national banks); 12 U.S.C. § 25b(1)(B). Under ordinary preemption principles, there are "three types of federal preemption: express preemption, field preemption, and conflict preemption." *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 457 (7th Cir. 2023). Applying these principles requires the Court to discern congressional intent. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381–82 (1992).

Because Illinois Bankers claim that IFPA "conflicts" with the FCUA, and the state statute is therefore preempted, the principle most relevant here is conflict preemption. (Dkt. 24 at 30–31). Conflict preemption occurs when "it would be 'impossible' . . . to comply with both state and federal law or . . . [when] state law . . . constitutes an 'obstacle' to satisfying the purposes and objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir. 2019). A court should not find conflict preemption "unless [preemption] was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012); *Barnett Bank*, 928 F.3d at 646–47; *see also Nichols v. Asbestos Workers Local 24 Pension Plan*, 835 F.2d 881,

4

892 n. 86 (D.C. Cir. 1987) ("the best guide to what a statute means is what it says"). Further, "[t]he challenger must show that applying the state law would do 'major damage' to clear and substantial federal interests." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) (quoting *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013)). Finally, regardless of the particular form of preemption at issue, preemption may not be "lightly applied" because of its potential encroachment on a state's police powers. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046, 1049 (7th Cir. 2013); *see also*

Illinois Bankers rely on language in the federal statute, which gives the NCUA "exclusive authority" to "regulate the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards) to members," (Dkt. 24 at 30); 12 C.F.R. § 701.21(b), to argue that IFPA is preempted. In other words, Illinois Bankers claim that by regulating credit card transactions, the IFPA usurps "exclusive power," which the FCUA gives to the NCUA. (Dkt. 24 at 30). Consequently, as Illinois Bankers see it, the FCUA preempts the IFPA.

The regulation Illinois Bankers point to, however, does not preempt all state laws regulating credit cards but instead, identifies specific aspects of the relationship between credit unions and their members that states cannot regulate. (Dkt. 76 at 30); 12 C.F.R. § 701.21(b). The FCUA's preemption clause does not appear to implicate the substance of what the IFPA is regulating. Illinois Bankers focus on one regulation, which states the FCUA preempts state laws regulating "[c]losing costs, application, origination, or other fees." 12 C.F.R. § 701.21(b)(1)(i)(C). But this regulation appears to refer to state laws regulating fees charged to credit union members in connection with an initial line of credit. *Id*. at § 701.21(b)(1). And the Interchange Fee Prohibition concerns what credit unions can charge merchants. 815 ILCS §150-10(a). Illinois Bankers offer no caselaw or other arguments, which explain why this specific NCUA regulation

5

of fees charged to consumers necessarily would preempt the Interchange Fee Prohibition—which concerns a credit union's ability to collect fees on credit and debit card transactions from merchants. Nothing indicates that the interchange fees are directly tied to loan interest or repayment terms, which would implicate the regulation.

Illinois Bankers cite *Neal v. Redstone Fed. Credit Union*, a case in which an Alabama appellate court found FCUA preempted a conflicting state law. 447 So.2d 805, 807 (Ala. Civ. App. 1984). In that case, the state law at issue set a lower cap (8%) on interest rates charged by lenders than FCUA permitted (12%). *Neal*, 447 So.2d at 807. Because a clear conflict was evident between the rates set by the state law and the rates set by FCUA, the Alabama court found the state law was preempted. *Id*. Unlike in *Neal*, where there was no way to comply with both laws because the caps conflicted, Illinois Bankers have not demonstrated why there is such an obvious conflict here. Plaintiffs do not show that complying with both laws would do "major damage" to FCUA goals, which warrant a likely finding of preemption. *Holcomb*, 965 F.3d at 547. Without more detail, Illinois Bankers have not made the "strong showing" necessary to persuade the Court that this regulation preempts the IFPA. *Halczenko*, 37 F.4th at 1324 (internal quotations omitted).

Illinois Bankers also claim that FCUA's grant of incidental power to federal credit unions also preempts IFPA's Data Usage Limitation provision. (Dkt. 24 at 31); 12 C.F.R. § 721.3(e). Their argument for preemption on this ground is weaker than their preemption claim concerning the Interchange Fee Prohibition. (Dkt. 104 at 19). While federal credit unions are granted incidental powers to engage in electronic financial services and data processing, there is no indication that IFPA's data provision would sufficiently undermine this power to warrant a conclusion of preemption.

6

Accordingly, Illinois Bankers have not demonstrated that they are likely to prevail on their claim that IFPA violates the federal rights of federal credit unions and is preempted by FCUA.

## II. 12 U.S.C. §1831a(j)

Illinois Bankers also claim that part of the Riegle–Neal Interstate Banking and Branching Efficiency Act's statutory framework—codified at 12 U.S.C. § 1831a(j)(1)—preempts the IFPA with respect to out-of-state state banks. (Dkt. 24 at 9). In particular, Illinois Bankers argue, because the Court granted Plaintiffs' preliminary injunction with respect to federal banks based on a finding that the National Bank Act ("NBA") likely preempts the IFPA, § 1831a(j)(1)'s plain language also extends that protection to out-of-state *state* banks. (*Id.*)

The federal statute states:

> The laws of a host State, including laws regarding community reinvestment, consumer protection, fair lending, and establishment of intrastate branches, shall apply to any branch in the host State of an out-of-State State bank to the same extent as such State laws apply to a branch in the host State of an out-of-State national bank. To the extent host State law is inapplicable to a branch of an out-of-State State bank in such host State pursuant to the preceding sentence, home State law shall apply to such branch.

12 U.S.C. § 1831a(j)(1). The statute's plain language clearly suggests that § 1831a(j)(1) is meant to ensure that out-of-state state banks can compete with nationally chartered banks. This means that because the Court granted the preliminary injunction with respect to nationally chartered banks, forcing out-of-state state banks to comply with the IFPA would run afoul of § 1831a(j)(1).

Additionally, other courts have applied the statute similarly. In readily *Pereira v. Regions Bank*, the Eleventh Circuit concluded that § 1831a(j) preempted a Florida statute as to out-of-state state banks, after it previously determined that the state law was preempted with respect to nationally chartered banks. 752 F.3d 1354, 1356 (2014). Like in *Pereira*, here, the Court previously concluded that the NBA likely preempts a state statute, (Dkt. 104 at 37), and therefore,

7

it follows that § 1831a(j) preempts the law as to out-of-state state banks. Indeed, even the State concedes that § 1831a(j)(1) is applicable if the Court finds that the NBA preempts IFPA—which the Court did in its December 2024 Order. (Dkt. 76 at 35, n. 15); (Dkt. 104 at 16–22).

Because the Court found that the NBA likely preempts the IFPA with respect to federal banks, applying § 1831a(j)(1), the IFPA is likely preempted with respect to out-of-state state banks.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction [15] is granted in part. With respect to federal credit unions, the motion is denied. With respect to out-of-state state banks, the motion is granted.

_____
Virginia M. Kendall
United States District Judge

Date: February 6, 2025