**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ILLINOIS BANKERS ASSOCIATION
et al.,

     Plaintiffs,

v.

KWAME RAOUL, in his official capacity as
Illinois Attorney General,

     Defendant.

No. 24 C 7307

Honorable Virginia M. Kendall

**THE ATTORNEY GENERAL'S INITIAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO RECONSIDER IN PART THE DENIAL OF SUMMARY JUDGMENT**

Kwame Raoul
Illinois Attorney General

R. Douglas Rees
Alex Hemmer
Darren Kinkead
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.      NCUA's rule does not comply with notice-and-comment requirements. ........................... 4

II.     NCUA's express preemption provision still does not apply................................................. 5

III.    Congress did not authorize NCUA to preempt state laws.................................................... 6

IV.     These arguments are not a "collateral attack" on NCUA's rule.......................................... 9

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Big Lagoon Rancheria v. California*,
   789 F.3d 947 (9th Cir. 2015) ............................................................................... 10

*English v. General Electric Co.*,
   496 U.S. 72 (1990) ............................................................................................... 9

*Fidelity Federal Savings & Loan Association v. de la Cuesta*,
   458 U.S. 141 (1982) ........................................................................................... 8, 9

*Gaunce v. deVincentis*,
   708 F.2d 1290 (7th Cir. 1983) ............................................................................ 10

*Grosso v. Surface Transportation Board*,
   804 F.3d 110 (1st Cir. 2015) ................................................................................ 8

*Kansas v. Garcia*,
   589 U.S. 191 (2020) ........................................................................................... 10

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) .......................................................................................... 7, 8

*Louisiana Public Service Commission v. FCC*,
   476 U.S. 355 (1986) ............................................................................................. 6

*Murphy v. NCAA*,
   584 U.S. 453 (2018) ........................................................................................... 10

*Natural Resources Defense Council v. Abraham*,
   355 F.3d 179 (2d Cir. 2004) ................................................................................. 5

*New York City v. FCC*,
   486 U.S. 57 (1988) ............................................................................................... 6

*Rice v. Norman Williams Co.*,
   458 U.S. 654 (1982) ............................................................................................. 9

*Time Warner Cable v. Doyle*,
   66 F.3d 867 (7th Cir. 1995) .................................................................................. 9

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ............................................................................................. 6

**Statutes**

5 U.S.C. § 553 ................................................................................................................ 3, 4

12 U.S.C. § 25b ................................................................................................................. 6

12 U.S.C. § 1757 ........................................................................................................... 3, 7

12 U.S.C. § 1766 ............................................................................................................... 7

815 ILCS 151/150-10 ........................................................................................................ 1

**Regulations**

12 C.F.R. § 701.21 ..................................................................................................... 1, 2, 3

12 C.F.R. § 701.5 ........................................................................................................ 3, 4, 6

**Other Authorities**

*Black's Law Dictionary*, "Administration" ....................................................................... 7

National Credit Union Administration, "Preemption—Federal Credit Union
        Non-Interest Charges and Fees," 91 Fed. Reg. 34,725 (June 9, 2026) ........... 3, 4, 5, 6, 7, 8

Senate Bill 3645, 104th Illinois General Assembly ......................................................... 4

**INTRODUCTION**

Apparently intent on turning this case into another *Jarndyce and Jarndyce*, plaintiffs ask the Court to cast aside its final decision once again and consider yet another federal agency's last-minute efforts to meddle. The Court should decline to disturb its rulings. The interim final rule issued this month by the National Credit Union Administration ("NCUA") is procedurally invalid because it does not comply with notice-and-comment requirements. On its face, the rule does not materially change the express preemption provision that the Court has twice held is insufficient to preempt the Interchange Fee Prohibition, 815 ILCS 151/150-10. Even if it did, NCUA is powerless under federal law to expressly preempt state law. And although the rule purports to clarify that federal credit unions may receive interchange fees, the Court never said otherwise; even so, it held, the Interchange Fee Prohibition does not cause major damage to Congress's design for federal credit unions and therefore is not conflict preempted.

**BACKGROUND**

**The Court's rulings.** The Court has twice held that the Federal Credit Union Act and NCUA's express preemption provision previously codified at 12 C.F.R. § 701.21(b) do not preempt the Interchange Fee Prohibition as to federal credit unions. First, in ruling on plaintiffs' preliminary injunction motion, the Court correctly observed that NCUA's express preemption provision "does not preempt all state laws" but rather "identifies specific aspects of the relationship between credit unions and their members that states cannot regulate." ECF 115 at 5. The Court explained that, although plaintiffs relied on a subsection of NCUA's express preemption provision purporting to "preempt[ ] state laws regulating '[c]losing costs, application, origination, or other fees,'" this subsection "appears to refer to state laws regulating fees charged to credit union members in connection with an initial line of credit," whereas "the

1

Interchange Fee Prohibition concerns what credit unions can charge merchants." *Id.* (citing 12 C.F.R. § 701.21(b)(1)(i)(C)). In other words, NCUA's express preemption provision "does not appear to implicate the substance of what the [Interchange Fee Prohibition] is regulating." *Id.*

At the preliminary injunction stage, the Court also rejected plaintiffs' alternative argument sounding in conflict preemption: that the Interchange Fee Prohibition poses some sort of obstacle to the objectives Congress wanted to achieve in passing the Federal Credit Union Act. ECF 115 at 4-5. The Court did not disagree with plaintiffs' contention that Congress authorized federal credit unions to receive interchange fees. *Id.* at 3-4; *see* ECF 24 at 30 ("Federal credit unions' power to participate in the processing of credit and debit card transactions thus carries with it the power to charge 'fees' for those services consistent with NCUA's oversight."). Nevertheless, the Court concluded that "Plaintiffs do not show that complying with both" the Federal Credit Union Act and the Interchange Fee Prohibition "would do 'major damage' to [Congress's] goals" and thus "warrant a likely finding of preemption." ECF 115 at 6.

A year later, in ruling on plaintiffs' summary judgment motion, the Court concluded that its "analysis at the preliminary injunction stage remains its final assessment of the [ ] Interchange Fee [Prohibition] as it applies to federal credit unions." ECF 179 at 33. Again, the Court held that NCUA's express preemption provision applicable to "state laws addressing '[c]losing costs, application, origination, or other fees' does not appear to implicate the substance of the Interchange Fee [Prohibition]." *Id.* (citing 12 C.F.R. § 701.21(b)(1)(i)(C)). The Court also explained that its preliminary injunction decision (which it reaffirmed at the summary judgment stage) "rested on ordinary principles of conflict preemption" and had "found that" the Interchange Fee Prohibition did not "conflict[ ] with Plaintiffs' proposed express and incidental federal credit union powers to such an extent that the State law could not still stand." *Id.* at 31.

2

**NCUA's interim final rule.** On June 9, 2026, NCUA issued an interim final rule, 91 Fed. Reg. 34,725, purporting to "reverse" the Court's rulings and preempt the Interchange Fee Prohibition on its own accord. The rule will become effective on June 30, 2026, *id.* at 34,725 and will remain effective indefinitely, *see* 5 U.S.C. § 553(b)(B).

As relevant here, the rule does two things. The first concerns the express preemption provision that previously was codified at 12 C.F.R. § 701.21(b). The rule moves this provision to new 12 C.F.R. § 701.5(b). *See* 91 Fed. Reg. at 34,732. But the rule does not make any substantive changes to the express preemption provision. The only change of any sort is that the rule removes the phrase "to members" at the end of this sentence describing the statutory authority under which the express preemption provision purportedly is promulgated: "This paragraph (b) is promulgated pursuant to the NCUA Board's exclusive authority as set forth in section 107(5) of the Federal Credit Union Act (12 U.S.C 1757(5)) to regulate the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards)." *Id.* at 34,732. The rule does not make any changes to the following subparagraphs (b)(i), (b)(ii), and (b)(iii), which provide that "state law[s] purporting to limit or affect" specific enumerated subjects are purportedly "preempt[ed]" by paragraph (b). *Id.*

The rule also creates 12 C.F.R. § 701.5(c), which provides in subparagraph (2) that federal credit unions "may charge non-interest charges and fees, including share account service charges and interchange fees from credit and debit card operations." 91 Fed. Reg. at 34,732. The word "charge" is defined in subparagraph (1) to "mean[ ] to directly or indirectly, through intermediaries, partners, payment networks, interchanges, or other third parties, assess, collect, impose, levy, receive, reserve, take, or otherwise obtain, including through a fee sharing or similar economic relationship." *Id.* This definition applies only "[f]or the purposes of this

3

paragraph (c)"; it does not apply to the express preemption provision in 12 C.F.R. § 701.5(b). *Id.*

NCUA explains that the purpose of these changes is to "clarif[y] that" federal credit unions "have authority" under the Federal Credit Union Act "to charge non-interest charges and fees, including interchange fees, and [that] NCUA has exclusive authority over" federal credit unions' "ability to charge non-interest charges and fees." 91 Fed. Reg. at 34,726. The upshot, as NCUA sees it, is that the rule "preempt[s] any state law affecting the non-interest charges and fees related to payment card services, including the" Interchange Fee Prohibition. *Id.* at 34,727.

## ARGUMENT

NCUA's rule provides the Court no reason to reconsider its prior holdings as to federal credit unions. The rule is procedurally improper. And, in any event, it does not expressly preempt the Interchange Fee Prohibition or alter the Court's conflict preemption analysis.

**I.      NCUA's rule does not comply with notice-and-comment requirements.**

Like OCC, *see* ECF 223 at 13-14, NCUA issued its rule without complying with the Administrative Procedure Act's notice-and-comment requirements. *See* 5 U.S.C. § 553(b) & (c). NCUA says it had "good cause" to ditch those requirements because complying would have been "impracticable, unnecessary, or contrary to the public interest." *Id.* 553(b)(B). But the bulk of the agency's justifications assume that the Interchange Fee Prohibition imminently would become effective in July 2026. 91 Fed. Reg. at 34,728-29. As NCUA acknowledges, however, the Illinois legislature delayed the prohibition's effective date to July 2027 a week before the agency issued its rule. *Id.* at 34,728 n.34 (citing Senate Bill 3645, § 70). An event that NCUA knows will not occur cannot justify its decision to dispense with notice-and-comment requirements.

NCUA insists that it still has good cause to throttle public comment because, it says, issuing the rule now (a year in advance of the Interchange Fee Prohibition's new effective date)

will clear up the "uncertainty" surrounding the state law's application to federal credit unions and "avoid unnecessarily prolonging the litigation" (seriously). 91 Fed. Reg. at 34,728 n.34. But the agency could have addressed these concerns two years ago (when the prohibition was enacted) or sixteen months ago (when the Court first held that NCUA's express preemption provision did not preempt it). Neither "an emergency of [NCUA's] own making," nor the "mere existence of deadline," nor "'a desire to provide immediate guidance'" suffices for good cause. *Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 205 (2d Cir. 2004). As the Court recently put it when considering OCC's similar decision to dispense with notice-and-comment requirements, the "good cause" exception "'should be limited to emergency situations.' It is hard to square those life-or-death circumstances with the given reason for the 'emergency' in this case: 'this Court's summary-judgment opinion.'" ECF 223 at 13-14 (citation omitted).

## II.     NCUA's express preemption provision still does not apply.

Turning to the substance of NCUA's rule, the agency says that its purpose is to establish that "NCUA has exclusive authority over" federal credit unions' "ability to charge non-interest charges and fees." 91 Fed. Reg. at 34,726. In other words, NCUA intends for its rule to "preempt any state law affecting the non-interest charges and fees related to payment card services, including the" Interchange Fee Prohibition. *Id.* at 34,727. Since the Court previously held that the plain language of NCUA's express preemption provision does *not* preempt the Interchange Fee Prohibition, one might have thought that NCUA would attempt to accomplish its objective by modifying the express preemption provision. And since the provision identifies preempted state laws by enumerating the subjects that they "purport[ ] to limit or affect," *id.* at 34,732, the simplest approach would have been to add "non-interest charges and fees" to the list.

Yet NCUA's rule does not make any substantive changes to the express preemption

5

provision now codified at 12 C.F.R. § 701.5(b). That's a problem: as the Court previously held,

nothing in the express preemption provision "implicate[s] the substance of what the [Interchange

Fee Prohibition] is regulating." ECF 115 at 5. "Non-interest charges and fees" are not "[r]ates of

interest and amounts of finance charges" governed by paragraph (b)(1)(i), "[t]erms of

repayment" governed by paragraph (b)(1)(ii), or "[c]onditions related to" lines of credit governed

by paragraph (b)(1)(iii). 91 Fed. Reg. at 34,732. Even NCUA seems to agree: it explains that

"[n]on-interest charges" are simply "*closely related*" to the preempted subjects described in

paragraph (b)(1) rather than *covered* by them. *Id.* at 34,726 n.8 (emphasis added). And because

12 C.F.R. § 701.5(b)(2) is that clear that the express preemption provision does not preempt state

laws "[e]xcept as provided by paragraph (b)(1)," *id.* at 34,732, it follows that state laws limiting

or affecting non-interest charges and fees still are not preempted by the provision's own terms.

### III. Congress did not authorize NCUA to preempt state laws.

Regardless, NCUA could not preempt the Interchange Fee Prohibition even if its rule

attempted to do so. When a federal agency purports to preempt state law, "the inquiry becomes

whether [it] has properly exercised its own delegated authority." *New York City v. FCC*, 486 U.S.

57, 64 (1988). This is because "an agency literally has no power to act, let alone pre-empt the

validly enacted legislation of a sovereign State, unless and until Congress confers power upon

it." *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 374 (1986). Time and again, the

Supreme Court has confirmed that "agencies have no special authority to pronounce on pre-

emption absent delegation by Congress." *Wyeth v. Levine*, 555 U.S. 555, 577 (2009).

On this crucial question, the NCUA rule at issue here is materially distinct from OCC's

recent actions. *See* ECF 223 at 5-6. Congress expressly gave OCC the authority to preempt state

law. 12 U.S.C. § 25b(b)(1)(B). But nothing in the Federal Credit Union Act purports to give

6

NCUA the authority to do the same. *See* ECF 179 at 32-33 (Congress intended to apply different preemption standards to national banks and federal credit unions).

Citing 12 U.S.C. § 1766(a), NCUA nevertheless insists that it "has broad power to issue regulations governing" federal credit unions and that it issued its rule purporting to preempt the Interchange Fee Prohibition under this "general regulatory authority." 91 Fed. Reg. at 34,727. But that is a non sequitur, as the plain language of the Federal Credit Union Act establishes. Section 1766(a) provides that NCUA "may prescribe rules and regulations for the administration of" the statute. "Administration" means "[t]he management or performance of the executive duties of a government, institution, or business." *Black's Law Dictionary*. In other words, section 1766(a) allows NCUA to issue regulations necessary to carry out the agency's powers and responsibilities enumerated elsewhere in the Federal Credit Union Act. Section 1766(a) is not an independent source of substantive authority and so on its own cannot authorize NCUA's rule.

Perhaps NCUA means to say that its preemption determination is authorized under one of the substantive provisions of the Federal Credit Union Act that it thinks permits federal credit unions to issue credit cards and therefore receive interchange fees. *E.g.*, 12 U.S.C. § 1757(5) ("extend lines of credit to its members"); *id.* § 1757(17) ("incidental powers" necessary "to carry on effectively [its] business"). At most, NCUA's "administration of" these provisions might authorize it to offer some thoughts on what those incidental powers are. 12 U.S.C. § 1766(a); *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (ultimately "courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action").

But if this is all that NCUA intends to accomplish, its rule is irrelevant because the Court has always assumed that the Federal Credit Union Act authorizes federal credit unions to receive interchange fees. Even so, it declined to hold that the Interchange Fee Prohibition is therefore

conflict preempted. *E.g.*, ECF 179 at 31-32 & 33 (reaffirming prior analysis that prohibition does not "conflict[ ] with Plaintiffs' proposed express and incidental federal credit union powers to such an extent that the State law could not still stand"). On the other hand, if what NCUA really seeks is not to clarify the extent of federal credit unions' powers but rather to tell the Court that it misapplied the law of conflict preemption, the rule is *ultra vires*. Because NCUA lacks any authorization from Congress to make its own preemption determinations, such a rule necessarily would fall outside "the scope of [its] delegated authority" under the Federal Credit Union Act. *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 154 (1982).

This means that the fate of NCUA's preemption determination turns on its power to persuade. *Loper Bright*, 603 U.S. at 402; *see Grosso v. Surface Transportation Board*, 804 F.3d 110, 116 (1st Cir. 2015) (even before *Loper Bright*, "the courts of appeals [were] unanimous in concluding that *Chevron* deference does not apply to preemption decisions by federal agencies"). As the Supreme Court explains, an agency's view "may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'" *Loper Bright*, 603 U.S. at 402.

NCUA's rule makes clear, however, that it is not relying on any factual premises within its own expertise. Its concerns about "the complex and potentially unworkable nature of the interchange fee prohibition" derive almost entirely from declarations submitted almost two years ago *in this litigation*. 91 Fed. Reg. at 34,729-30 & nn.47, 48, 49, 50, 52, & 57. NCUA has done nothing more than assess the same evidence that the Court already assessed and reached a different conclusion. For whatever that may be worth, it cannot override the "elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying *their own* judgment." *Loper Bright*, 603 U.S. at 391-92 (emphasis added).

Besides, NCUA's preemption determination ignores Supreme Court precedent. "The

existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of [a] state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). And a theoretical clash based solely on assumptions about how private actors might respond to overlapping state and federal regulations "is simply too speculative a basis on which to rest a finding of pre-emption." *English v. General Electric Co.*, 496 U.S. 72, 90 (1990) (cleaned up).

As the Attorney General explained, plaintiffs' evidence is anecdotal and speculative: it provides no basis to conclude that the concerns shared by the one or two federal credit unions that submitted declarations will ever be *realized*—much less that their experience will be common to *all* federal credit unions and result in systemic consumer harm. ECF 138 at 29-30. The Court was right to find that this evidence failed to establish a conflict between state and federal law. ECF 179 at 33. NCUA's rule does nothing to undermine the Court's analysis.

## IV. These arguments are not a "collateral attack" on NCUA's rule.

Presumably plaintiffs will renew their argument that the Court cannot consider any of this because it would amount to an impermissible "collateral attack" on NCUA's rule. The Court was right to reject this argument (in considering OCC's actions) as an impermissible attempt to "invalidate the" Interchange Fee Prohibition "without a judicial proceeding" by requiring the Court to rubber-stamp the agency's judgment. ECF 223 at 8. As the Court recognized, the Supreme Court itself assesses whether an agency's "'action is within the scope of [its] delegated authority'" before considering whether the action preempts state law. *Id.* at 8-9 (quoting *Fidelity*, 458 U.S. at 154); *see, e.g.*, *Time Warner Cable v. Doyle*, 66 F.3d 867, 876 (7th Cir. 1995) ("we begin our analysis" of private actor's claim that federal regulation preempts state law by "consider[ing] whether" regulation "is compatible with" statute under which it was issued).

To be sure, some cases require courts to assume agency action is valid on collateral

9

attack. But those cases are inapposite. They concern plaintiffs who forego administrative review to pursue other affirmative relief, *e.g.*, *Gaunce v. deVincentis*, 708 F.2d 1290, 1292-93 (7th Cir. 1983), or defendants who challenge agency action in asserting an affirmative defense, *e.g.*, *Big Lagoon Rancheria v. California*, 789 F.3d 947, 952-54 (9th Cir. 2015).

The common thread is that the litigant collaterally attacking agency action put the issue before the court. Here, by contrast, *plaintiffs* put the validity of NCUA's rule before the Court. *E.g.*, *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption only "stem[s] from" a "*valid*" federal law) (emphasis added). If plaintiffs were to contend that the Interchange Fee Prohibition was preempted by a *statute*, of course the Court would consider whether the statute was valid in resolving the claim. *E.g.*, *Murphy v. NCAA*, 584 U.S. 453, 479-80 (2018). Post-*Loper Bright*, a mere regulation cannot possibly be entitled to more preferential treatment than a statute.

## CONCLUSION

NCUA's rule does not affect the Court's preemption determinations as to federal credit unions. The Court should therefore deny plaintiffs' motion to reconsider. ECF 226.

Dated: June 22, 2026

Respectfully submitted,

/s/ Darren Kinkead
R. Douglas Rees
Alex Hemmer
Darren Kinkead
Office of the Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov

10