## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| ILLINOIS BANKERS ASSOCIATION, AMERICAN BANKERS ASSOCIATION, AMERICA'S CREDIT UNIONS, and ILLINOIS CREDIT UNION LEAGUE, <br><br> *Plaintiffs*, <br><br><br> v. <br><br> KWAME RAOUL, in his official capacity as Illinois Attorney General, <br><br> *Defendant*. | Case No. 1:24-cv-07307 <br><br> Hon. Virginia M. Kendall |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
## FOR PARTIAL RECONSIDERATION

-i-

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     THERE ARE NO BARRIERS TO THIS COURT APPLYING THE NCUA
RULE. ......................................................................................................................2

II.    THE RULE COMPELS THE CONCLUSION THAT THE FCUA PREEMPTS
THE INTERCHANGE FEE PROHIBITION...........................................................5

     A.    The Rule Expressly Preempts the Interchange Fee Prohibition.............5

     B.    The Interchange Fee Prohibition Conflicts with Federal Credit Unions'
Power to Charge Interchange Fees. ........................................................7

CONCLUSION.....................................................................................................................9

-i-

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alabama v. PCI Gaming Auth.*,
  801 F.3d 1278 (11th Cir. 2015) ............................................................................................4

*Ass'n of Am. Physicians & Surgeons v. Sebelius*,
  746 F.3d 468 (D.C. Cir. 2014) ..............................................................................................5

*Caine v. Burge*,
  897 F. Supp. 2d 714 (N.D. Ill. 2012) ....................................................................................2

*Cousins v. Secretary of the U.S. DOT*,
  880 F.2d 603 (1st Cir. 1989) .................................................................................................4

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982) ........................................................................................................5, 8, 9

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ...........................................................................................................7, 8

*Ind. Right to Life Victory Fund v. Morales*,
  66 F.4th 625 (7th Cir. 2023) .................................................................................................4

*Int'l Aerobatics Club Chapter 1 v. City of Morris*,
  76 F. Supp. 3d 767 (N.D. Ill. 2014) ......................................................................................3

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986)...............................................................................................................5

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020).............................................................................................................4, 5

*Nat'l Bank v. Commonwealth*,
  76 U.S. 353 (1869).................................................................................................................8

*Osei-Bonsu v. Fed. Home Loan Bank of N.Y.*,
  726 F. Supp. 95 (S.D.N.Y. 1989) .........................................................................................8

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*,
  906 F. Supp. 2d 202 (S.D.N.Y. 2012)...................................................................................8

*Time Warner Cable v. Doyle*,
  66 F.3d 867 (7th Cir. 1995) ...................................................................................................5

*United Mine Workers of Am. v. Kleppe*,
 561 F.2d 1258 (7th Cir. 1977) ................................................................................5

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
 535 U.S. 635 (2002).................................................................................................3

*Watters v. Wachovia Bank, N.A.*,
 550 U.S. 1 (2007).....................................................................................................8

*Wis. Right to Life, Inc. v. Schober*,
 366 F.3d 485 (7th Cir. 2004) ..................................................................................4

**STATUTES**

28 U.S.C. § 1331..............................................................................................................3

**RULES**

Fed. R. Civ. P. 54............................................................................................................2

**REGULATIONS**

12 C.F.R. § 701.5.............................................................................................................2

12 C.F.R. § 701.21...........................................................................................................6

12 C.F.R. § 721.3.............................................................................................................7

91 Fed. Reg. 34,725 ................................................................................................. *passim*

**INTRODUCTION**

As Plaintiffs have maintained throughout this litigation, the Federal Credit Union Act ("FCUA") preempts the namesake Interchange Fee Prohibition of the Illinois Interchange Fee Prohibition Act ("IFPA"). This Court's first summary-judgment opinion disagreed, concluding that the then-existing National Credit Union Administration ("NCUA") preemption regulation did not apply to the Interchange Fee Prohibition, and that the prohibition did not impermissibly intrude on federal credit unions' powers. In response, as the Office of the Comptroller of the Currency ("OCC") did with respect to National Bank Act ("NBA") and Home Owner's Loan Act ("HOLA") preemption, the NCUA took action to clarify that the FCUA preempts the Interchange Fee Prohibition. *See* Preemption—Federal Credit Union Non-Interest Charges and Fees, 91 Fed. Reg. 34,725 (June 9, 2026). The NCUA did so in two ways.

First, the NCUA eliminated any doubt about express preemption of the Interchange Fee Prohibition by amending its regulations to clarify that any state law "purporting to limit or affect" credit-card fees, whether charged to credit-union members or non-members, is preempted. *Id.* at 34,732/1.

Second, the NCUA rule confirms that federal credit unions have the power to charge interchange fees "directly or indirectly, through intermediaries, partners, payment networks, interchanges, or other third parties." *Id.* at 34,732/2. Like the OCC rule that this Court applied to hold that the NBA preempts the Interchange Fee Prohibition, *see* Dkt. No. 223 at 21, the NCUA rule further clarifies that "[d]ecisions regarding charging non-interest charges and fees, including … whether they are set by or in consultation with third parties, are business decisions to be made by each Federal credit union, in its discretion." 91 Fed. Reg. at 34,733/1. The Interchange Fee Prohibition conflicts with this power and discretion that the NCUA provides federal credit unions.

1

This intervening change in law is ample basis to grant reconsideration under Federal Rule of Civil Procedure 54(b) and the Court's inherent authority. *See, e.g.*, *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). And there are no threshold barriers to this Court applying the NCUA rule. Plaintiffs therefore ask that this Court reconsider its denial of their motion for summary judgment on FCUA preemption, grant that motion, and enjoin enforcement of the Interchange Fee Prohibition against federal credit unions and other entities participating in electronic payment transactions that facilitate federal credit unions' receipt of interchange fees.

## ARGUMENT

This Court has jurisdiction to apply the NCUA's rule, which is presumptively lawful and applies unless it is properly vacated in an APA action. The rule provides two further reasons, beyond those Plaintiffs have already argued, to conclude that the FCUA preempts the Interchange Fee Prohibition: It amends the NCUA's express-preemption regulation to more clearly cover the Interchange Fee Prohibition, and it makes clear that the Interchange Fee Prohibition conflicts with federal credit unions' broad power to charge interchange fees. Enforcement of the Interchange Fee Prohibition against federal credit unions, as well as third parties that facilitate federal credit unions' receipt of interchange fees, should thus be enjoined.

## I.      THERE ARE NO BARRIERS TO THIS COURT APPLYING THE NCUA RULE.

This Court's briefing order directed the parties to address "any relevant threshold issues comparable to those discussed in the June 1 Ruling." Dkt. No. 228. No threshold issues keep this Court from reaching "the heart of the matter: whether the new" 12 C.F.R. § 701.5 preempts the Interchange Fee Prohibition. Dkt. No. 223 at 20. First, the Court has jurisdiction, as it has since the beginning of this case. Second, as this Court concluded in addressing the OCC's actions, procedural challenges to the NCUA rule may be brought only in a separate Administrative

2

Procedure Act suit. Third, any objections to the NCUA's good-cause finding are further beside the point in light of the agency's intent to take comments and publish a final rule.

**A.** This Court has jurisdiction to apply the NCUA rule and enjoin the Attorney General's enforcement of the Interchange Fee Prohibition. Plaintiffs seek a declaratory judgment that the IFPA is contrary to federal law and an injunction prohibiting the Attorney General from enforcing it. Dkt. No. 1, ¶¶ 18-20. So there is "no doubt that" this Court has "jurisdiction under [28 U.S.C.] § 1331 to entertain" this suit and decide whether the FCUA preempts the Interchange Fee Prohibition. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002). The NCUA's rule is simply a new legal authority that bears on the resolution of that question.

This Court therefore correctly concluded with respect to the OCC's earlier actions that it had jurisdiction to "assess[] the impact of the OCC's assertions on the legal question at hand, separate and apart from an action … to challenge the methods by which the agency came to its decision." Dkt. No. 223 at 8. Thus, the NCUA's "absence from the suit does not prevent the Court from according complete relief between the existing parties on the question in front of it—specifically, whether the IFPA is preempted by federal law." *Id.* at 9.

In addition, there is no reason to think that the NCUA rule might moot the case. As this Court has correctly concluded, Plaintiffs' standing in this case stems from the threat of enforcement by the Attorney General, which an injunction against enforcement will redress. Dkt. No. 104 at 6-11; *see also* Dkt. No. 179 at 9 (adopting the preliminary-injunction-stage analysis). So Plaintiffs' claim is not moot unless there is "absolute certainty" that the threat of enforcement has been eliminated. *Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 777 (N.D. Ill. 2014). Federal regulators' views that a statute is preempted, while worthy of weight on the merits, cannot provide that certainty; "[i]t is only 'when a *state agency* acknowledges that it

3

will not enforce a statute because it is *plainly* unconstitutional' that such statements might mean anything at all" with respect to the threat of enforcement. *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 631 (7th Cir. 2023) (first emphasis added) (quoting *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004)). Here, by contrast, the Attorney General has taken the position that neither the OCC's nor the NCUA's action preclude enforcement of the Interchange Fee Prohibition. *See* Dkt. No. 217 (OCC); Dkt. No. 226 at 2 (NCUA).

**B.** Although the Court has jurisdiction to apply the NCUA's rule, any procedural objections to the manner in which the NCUA promulgated the rule are not properly before the Court. The APA's cause of action is the proper way to challenge agencies' compliance with the APA and other procedural requirements, especially where the analysis requires review of the administrative record or the agency's decisionmaking process. *See Cousins v. Secretary of the U.S. DOT*, 880 F.2d 603, 605 (1st Cir. 1989) (en banc) (Breyer, J.) ("The APA was intended to provide … a single uniform method for review of agency action."); *see also Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1292-93 (11th Cir. 2015). As this Court concluded with respect to the OCC's actions, it therefore could "[]not invalidate the agency's actions under the arbitrary and capricious standard nor any other term under the APA, despite the contentions of the Attorney General to the contrary." Dkt. No. 223 at 8. If the Attorney General raises procedural objections to the NCUA's rule, they are misplaced here for the same reasons.

**C.** The NCUA's intent to issue a final rule provides further reason not to reach any good-cause argument. The NCUA has requested comment on its interim final rule and "intends to issue a final rule as soon as possible after the close of the comment period and sufficient time to consider and address comments." 91 Fed. Reg. at 34,729/1. So inquiry "into the exception will be functionally moot." Dkt. No. 223 at 19; *see also Little Sisters of the Poor Saints Peter & Paul*

4

*Home v. Pennsylvania*, 591 U.S. 657, 686 n.14 (2020); *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 472 (D.C. Cir. 2014).  And any challenge to the propriety of the final rule is not yet ripe, and would likely be meritless regardless.  Dkt. No. 223 at 19-20; *Little Sisters*, 591 U.S. at 683-86 (upholding a final rule issued after an interim final rule).

In short, no threshold issue limits the Court's duty to apply the NCUA rule or its authority to grant federal credit unions complete relief.  The rule is presumptively valid and should be applied.  *United Mine Workers of Am. v. Kleppe*, 561 F.2d 1258, 1263 (7th Cir. 1977).

## II. THE RULE COMPELS THE CONCLUSION THAT THE FCUA PREEMPTS THE INTERCHANGE FEE PROHIBITION.

The amended NCUA regulation preempts the Interchange Fee Prohibition in at least two ways.  First, the NCUA clarified that its express-preemption regulation applies to interchange fees.  And second, it made explicit federal credit unions' power to charge interchange fees by relying on rates from third parties—the very activity the Interchange Fee Prohibition restricts.  For each of those reasons, the FCUA preempts the Interchange Fee Prohibition.

### A. The Rule Expressly Preempts the Interchange Fee Prohibition.

"[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986)); *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.").  The NCUA has exercised that authority to expressly preempt state laws that limit or affect "the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards)." 91 Fed. Reg. at 34,732/1.  Its interim final rule clarifies that the regulation's preemptive scope "is not limited to charges directly to members." *Id.*

5

at 34,727/3. That is the point of the rule—to make clear that the FCUA preempts laws like the IFPA. *Id.* at 34,727/2. It accomplishes its purpose.

The NCUA's amendment to its regulation is directly responsive to this Court's reasons for concluding that the express-preemption provision did not apply to the Interchange Fee Prohibition. This Court read the prior version of the regulation to apply only to "specific aspects of the relationship between credit unions and their members." Dkt. No. 115 at 5 (conclusion at preliminary injunction stage); *see also* Dkt. No. 179 (adopting that analysis at summary judgment stage). Based on its conclusion that "the Interchange Fee Prohibition concerns what credit unions can charge merchants," the Court thus held that the prior version of the express-preemption provision did not apply. Dkt. No. 115 at 5-6.

The rule resolves the issue, removing "the words 'to members'" from the description of the areas that fall within the NCUA's exclusive authority in order "to clarify that the" NCUA's exclusive "authority to regulate the rates, terms of repayment and other conditions of [federal credit unions'] loans and lines of credit (including credit cards) is not limited to charges directly to members." 91 Fed. Reg. at 34,727/3; *compare id.* at 34,732/1 *with* 12 C.F.R. § 701.21(b)(1). In addition, in light of the parties' prior focus on the list in the regulation of specific types of rates, terms of repayment, and other conditions that are preempted, the NCUA emphasized that the list is "not intended to be exhaustive." 91 Fed. Reg. at 34,726/1. As the revised regulation confirms, the NCUA has "exclusive authority … to regulate the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards)." *Id.* at 34,732/1. "This exercise of the Board's authority preempts any state law purporting to limit or affect" federal-credit-union activities that fall within that sphere of exclusive NCUA power. *Id.*

6

The Interchange Fee Prohibition is precisely such a law because it directly affects the fees federal credit unions receive for providing credit-card services, an important "condition[] of" federal credit unions' credit-card offerings. *Id.* Underscoring that point, the NCUA included within the same new "Preemption" regulation a subsection on federal credit unions' power to "charge non-interest charges and fees, including share account service charges and interchange fees from credit and debit card operations." *Id.* at 34,732/3.

**B.** **The Interchange Fee Prohibition Conflicts with Federal Credit Unions' Power to Charge Interchange Fees.**

Even setting express preemption aside, the rule reaffirms federal credit unions' power to charge interchange fees and their discretion to set those fees according to their business judgment. Just as the Data Usage Limitation "disrupts federal credit unions' ability to" exercise their powers "to engage in 'electronic financial services' … and 'data processing' … in a meaningful way," Dkt. No. 179 at 34 (quoting 12 C.F.R. § 721.3(d), (e)) (cleaned up), the Interchange Fee Prohibition is "an 'obstacle' to the accomplishment" of the federal objective in recognizing federal credit unions' significant flexibility to charge interchange fees according to their business judgment, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 886 (2000). That conflict between the state and federal regulatory schemes provides an additional reason that the Interchange Fee Prohibition is preempted.

As a threshold matter, as Plaintiffs have explained in this Court and the Seventh Circuit, federal credit unions are subject to the same preemption standard as other federal financial instrumentalities like national banks and Federal savings associations. Dkt. No. 146 at 10-13; 7th Cir. No. 26-1354, Doc. No. 80 at 29-40. Nothing about the express preemption provisions that Dodd-Frank added to the NBA and HOLA, which addressed NBA preemption of certain "state consumer financial laws" and conformed the preemption standard for Federal savings associations to that applicable to national banks, relegated federal credit unions—or any of the other federal

financial instrumentalities that have long enjoyed the robust federal-instrumentality preemption that *Barnett Bank* applies to national banks—to second-class status. 7th Cir. No. 26-1354, Doc. No. 80 at 37-39. Instead, since long before *Dodd-Frank*, that robust preemption doctrine has applied to "banks or other corporations or instrumentalities of the government" alike, including federal credit unions. *Nat'l Bank v. Commonwealth*, 76 U.S. 353, 361 (1869); *see also Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F. Supp. 2d 202, 236 (S.D.N.Y. 2012) (state law is preempted when "state prescriptions significantly impair the exercise of" a federal reserve bank's federal powers (quoting *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11-12 (2007))), *aff'd* 742 F.3d 37 (2d Cir. 2014); *Osei-Bonsu v. Fed. Home Loan Bank of N.Y.*, 726 F. Supp. 95, 98 (S.D.N.Y. 1989) ("[L]ogic and consistency dictate that the Federal Home Loan Banks are federal instrumentalities, and that employment disputes between them and their employees may not be prosecuted by state or local agencies.").

Regardless, even under ordinary conflict-preemption principles, one way for state law to stand as an obstacle to federal regulatory objectives is for the state to deprive regulated entities of the flexibility that federal regulations provide. *Geier*, 529 U.S. at 881; *see also Fidelity*, 458 U.S. at 155. In *Geier*, for example, the Department of Transportation consciously chose to give car manufacturers flexibility to decide which protection system to use in their cars. 529 U.S. at 881. So when state law was interpreted to require one particular protection system, it "stood as an obstacle to the accomplishment and execution of" the federal regulatory objective and was preempted. *Id.* (internal quotation marks omitted).

The same principles apply here, as this Court's analysis of NBA preemption in light of the OCC's similar regulatory clarification shows. The OCC amended its regulation to reaffirm national banks' power to charge interchange fees, including fees set by third parties. This Court

8

then concluded that, "in a world where the national banks' powers will include the discretion to have third parties set their fees for them, it is difficult to see how the IFPA is not 'an obstacle to the accomplishment and execution of the full purposes and objectives' of that power." Dkt. No. 223 at 24 (quoting *Fidelity*, 458 U.S. at 156).

Exactly the same is true of a world where federal credit unions' powers include the discretion to charge interchange fees "indirectly, through intermediaries" like payment networks at rates "set by or in consultation with third parties." 91 Fed. Reg. at 34,733/1. The same conclusion that this Court drew after the OCC rule should therefore follow after NCUA's recent rulemaking: The Interchange Fee Prohibition is "an obstacle to the accomplishment and execution of the full purposes and objectives" of federal credit unions' power to charge interchange fees, so it is preempted. Dkt. No. 223 at 24 (quoting *Fidelity*, 458 U.S. at 156).

## CONCLUSION

For the foregoing reasons, the Federal Credit Union Act preempts the IFPA's Interchange Fee Prohibition. Plaintiffs respectfully ask that this Court enjoin enforcement of the Interchange Fee Prohibition against federal credit unions and other entities participating in electronic payment transactions that facilitate federal credit unions' receipt of interchange fees.

Dated:  June 22, 2026

Carolyn Settanni (*pro hac vice*)
ILLINOIS BANKERS ASSOCIATION
194 East Delaware Place, Ste. 500
Chicago, IL 60611
Telephone: +1.312.453.0167
csettanni@illinois.bank

Thomas Pinder (*pro hac vice*)
Andrew Doersam (*pro hac vice*)
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave NW
Washington, DC 20036
Telephone: +1.202.663.5035
TPinder@aba.com
adoersam@aba.com

Ann C. Petros (*pro hac vice*)
AMERICA'S CREDIT UNIONS
4703 Madison Yards Way, Suite 300
Madison, WI 53705
Telephone: +1.703.581.4254
APetros@americascreditunions.org
chunt@americascreditunions.org

Ashley Niebur Sharp (*pro hac vice*)
ILLINOIS CREDIT UNION LEAGUE
225 South College, Suite 200
Springfield, Illinois 62704
Telephone: +1.217.372.7555
Ashley.Sharp@ICUL.com

Respectfully submitted,

/s/ *Bethany K. Biesenthal*
Bethany K. Biesenthal (N.D. Ill. 6282529)
Shea F. Spreyer (N.D. Ill. 6335869)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
bbiesenthal@jonesday.com
sfspreyer@jonesday.com

Charlotte H. Taylor (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700
ctaylor@jonesday.com

Matthew J. Rubenstein (*pro hac vice*)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: +1.612.217.8800
Facsimile: +1.844.345.3178
mrubenstein@jonesday.com

Boris Bershteyn (*pro hac vice*)
Kamali P. Willett (*pro hac vice*)
Sam Auld (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000
boris.bershteyn@skadden.com
kamali.willett@skadden.com
sam.auld@skadden.com

Amy Van Gelder (N.D. Ill. 6279958)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
320 South Canal Street

10

Chicago, IL 60606
amy.vangelder@skadden.com

*Attorneys for Illinois Bankers Association,*
*American Bankers Association, America's*
*Credit Unions, and Illinois Credit Union*
*League*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on June 22, 2026, a copy of the foregoing was filed using the CM/ECF system.

/s/ *Bethany K. Biesenthal*

*Attorney for Illinois Bankers Association, American Bankers Association, America's Credit Unions, and Illinois Credit Union League*