**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ILLINOIS BANKERS ASSOCIATION
et al.,

      Plaintiffs,

v.

KWAME RAOUL, in his official capacity as
Illinois Attorney General,

      Defendant.

No. 24 C 7307

Honorable Virginia M. Kendall

**THE ATTORNEY GENERAL'S RESPONSE TO PLAINTIFFS' INITIAL
BRIEF IN SUPPORT OF THEIR MOTION TO RECONSIDER
IN PART THE DENIAL OF SUMMARY JUDGMENT**

Kwame Raoul
Illinois Attorney General

R. Douglas Rees
Alex Hemmer
Darren Kinkead
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

I.      The Court can (and should) consider whether NCUA's rule is valid................................ 1

II.    NCUA's rule does not expressly preempt the Interchange Fee Prohibition........................ 4

III.   The Interchange Fee Prohibition does not conflict with federal law. ................................ 5

CONCLUSION.................................................................................................................. 8

ii

## TABLE OF AUTHORITIES

**Cases**

*Chafin v. Chafin*,
568 U.S. 165 (2013)................................................................................................. 4

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
603 U.S. 799 (2024) ................................................................................................ 2

*C.Y. Wholesale, Inc. v. Holcomb*,
965 F.3d 541 (7th Cir. 2020) ................................................................................. 7

*Driftless Area Land Conservancy v. Valcq*,
16 F.4th 508 (7th Cir. 2021)................................................................................. 1, 2

*Fidelity Federal Savings & Loan Association v. de la Cuesta*,
458 U.S. 141 (1982)................................................................................................ 2

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
827 F.3d 223 (2d Cir. 2016) ................................................................................. 7

*Kansas v. Garcia*,
589 U.S. 191 (2020)............................................................................................... 2, 7

*Kisor v. Wilkie*,
588 U.S. 558 (2019)................................................................................................ 5

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020)................................................................................................ 4

*MITE Corp. v. Dixon*,
633 F.2d 486 (7th Cir. 1980) ................................................................................ 7

*Monsanto Company v. Durnell*,
No. 24-1068, 2026 WL 1825691 (U.S. June 25, 2026) ...................................... 5

*Murphy v. NCAA*,
584 U.S. 453 (2018)................................................................................................ 2

*National Bank v. Commonwealth*,
76 U.S. 353 (1869)................................................................................................. 6

*Osei-Bonsu v. Federal Home Loan Bank of New York*,
726 F. Supp. 95 (S.D.N.Y. 1989) ........................................................................ 6

*Rice v. Norman Williams Co.*,
        458 U.S. 654 (1982)...........................................................................................8

*Starr International Co. v. Federal Reserve Bank of New York*,
        906 F. Supp. 2d 202 (S.D.N.Y. 2012) ...............................................................6

*Time Warner Cable v. Doyle*,
        66 F.3d 867 (7th Cir. 1995)...............................................................................2

*Trump v. CASA, Inc.*,
        606 U.S. 831 (2025)...........................................................................................2

*United States v. Illinois*,
        795 F. Supp. 3d 1057 (N.D. Ill. 2025) ..............................................................8

*Whole Woman's Health v. Jackson*,
        595 U.S. 30 (2021).............................................................................................2

**Statutes**

5 U.S.C. § 706...........................................................................................................2

28 U.S.C. § 3702....................................................................................................2, 3

**Regulations**

12 C.F.R. § 701.5 ...................................................................................................4, 7

**Other Authorities**

National Credit Union Administration, "Preemption—Federal Credit Union Non-Interest
        Charges and Fees," 91 Fed. Reg. 34,725 (June 9, 2026) ..............................4, 7

Illinois Public Act 104-532 .....................................................................................1

Senate Bill 3645, 104th Illinois General Assembly .................................................1

iv

## INTRODUCTION

For almost two years now, as this case has wended its way from the preliminary injunction stage to the summary judgment stage—and then up to the Seventh Circuit and back again—the Court has consistently held that the Federal Credit Union Act does not preempt the Interchange Fee Prohibition. As the Attorney General explained in his initial brief, ECF 229, NCUA's rule does not justify any change to the Court's conclusion: the rule is procedurally invalid, does not expressly preempt the Interchange Fee Prohibition, and in any event exceeds NCUA's authority. Plaintiffs' initial brief, ECF 230, does not grapple with these shortcomings and therefore fails to rehabilitate the rule. The Court should reaffirm its prior rulings.[*]

## I.      The Court can (and should) consider whether NCUA's rule is valid.

NCUA's rule is invalid because it fails to comply with either the Administrative Procedure Act's notice-and-comment requirements or the good-cause exception to those requirements. ECF 229 at 4-5. Plaintiffs do not defend NCUA's process but instead insist that the Court must ignore these defects because the Attorney General hasn't asserted an Administrative Procedure Act counterclaim. ECF 230 at 4. This argument erroneously assumes that resolving plaintiffs' preemption challenge requires the Court to grant relief that is available only under that statute. To understand why it doesn't, consider an important similarity—and an irrelevant difference—between statutes and regulations that a federal court has found to be unlawful.

Start with statutes. Strictly speaking, federal courts do not "strike down" statutes that they conclude are unconstitutional; rather, they decline to apply those statutes to the parties in the case before them. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521-22 (7th Cir. 2021); *see*

---

[*] As the Court knows, the Illinois legislature recently passed Senate Bill 3645. Section 70 of the bill extends the effective date of the Interchange Fee Prohibition to July 1, 2027. On June 26, 2026, the Governor approved the bill, and it became law as Public Act 104-532.

*Trump v. CASA, Inc.*, 606 U.S. 831, 841-47 (2025); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). When the Supreme Court held in *Murphy v. NCAA*, 584 U.S. 453, 479-80 (2018), for example, that 28 U.S.C. § 3702 exceeds Congress's authority, it did not erase the statute from the United States Code. But the consequence of the Supreme Court's holding was that the plaintiff there was not entitled to the injunction it had requested forbidding state officials to enforce state law that the plaintiff thought was preempted by the unconstitutional federal statute.

It works the same way when a plaintiff contends that state law is preempted by regulation: federal courts consider whether the regulation is valid because, if it isn't, there's no basis to award the requested relief. *E.g.*, *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 154 (1982); *Time Warner Cable v. Doyle*, 66 F.3d 867, 876 (7th Cir. 1995); *see Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption only "stem[s] from" a "valid" federal law). In other words, the court determines whether the regulation is valid *as between the parties*—just as the Supreme Court did with 28 U.S.C. § 3702 when it decided *Murphy*. Although plaintiffs resist this, they do not cite any case where a federal court refused to consider whether a regulation was valid and held that, regardless, the regulation preempted state law.

Plaintiffs instead focus their attention on the Administrative Procedure Act. But this is a red herring. To be sure, a federal court hearing a claim under that statute may "set aside" the challenged agency action if it determines that it is unlawful. 5 U.S.C. § 706(2); *see Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring) ("federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules"). Setting aside or vacating an unlawful regulation has the practical result of erasing it from the Code of Federal Regulations. As explained, there is no equivalent option available for an unlawful statute. *See Driftless Area*, 16 F.4th at 521-22.

2

But the additional relief that is available under the Administrative Procedure Act is irrelevant here because, as *Fidelity* and *Time Warner* establish, the Court simply needs to determine whether NCUA's rule is valid *as between the parties*. Just as the Supreme Court did not need to "strike down" 28 U.S.C. § 3702 to determine that the statute exceeds Congress's authority and therefore lacks the preemptive effect that the plaintiff in *Murphy* claimed, this Court does not need to set aside or vacate NCUA's rule to determine that the rule exceeds NCUA's authority and therefore lacks the preemptive effect that plaintiffs here claim. *See* ECF 231 at 4-5 (regulation that fails to satisfy the notice-and-comment requirement and the good-cause exception "has no greater legal effect or importance than if the agency had purported to amend its regulations via court brief, website change, or social media post"). Put simply, the Attorney General has not asked the Court to grant relief under the Administrative Procedure Act because it's not necessary for the Court to adjudicate plaintiffs' preemption claim.

Plaintiffs offer an alternative reason why the Court should decline to consider whether NCUA's rule complies with the good-cause exception—call it the Goldilocks excuse. The argument turns on NCUA's intent to issue (at some unknown time) a final rule that will replace the interim rule currently before the Court. ECF 230 at 4-5. As plaintiffs see things, this means it's too late for the Court to consider the validity of the interim rule—but (conveniently) too soon to consider the validity of the (anticipated) final rule. *Id.* In the meantime, they say, there's nothing for the Court to do but rubberstamp their arguments and enter judgment in their favor.

The problem with this argument is that plaintiffs are asking the Court to hold that the interim rule preempts the Interchange Fee Prohibition. As in *Fidelity* and *Time Warner*, this means that the interim rule's validity is at issue. The question might *become* moot if NCUA issues a final rule and plaintiffs then ask the Court to hold that the final rule preempts the

3

Interchange Fee Prohibition. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 668-70 (2020); *see* ECF 231 at 5-6. But for as long as plaintiffs are trying to wield the interim rule as a cudgel against state law, the parties' "dispute" about its validity remains "very much alive." *Chafin v. Chafin*, 568 U.S. 165, 173 (2013).

## II.     NCUA's rule does not expressly preempt the Interchange Fee Prohibition.

On its face, NCUA's rule does not expressly preempt the Interchange Fee Prohibition because it does not make any substantive changes to the express preemption provision now codified at 12 C.F.R. § 701.5(b). ECF 229 at 5-6. This provision consists of a preamble in which the agency shares its views on the statutory authority empowering it to preempt state law, followed by a list of subjects that NCUA thinks state laws may not "limit or affect." 91 Fed. Reg. at 34,732. In other words, the express preemption provisions first announces *why* NCUA believes it is authorized to preempt state laws and then enumerates *which* state laws NCUA is exercising this authority to preempt. The Court held that this list of preempted subjects doesn't include the Interchange Fee Prohibition, *e.g.*, ECF 115 at 5, and NCUA's rule doesn't make any changes to the list, 91 Fed. Reg. at 34,732. So the rule provides no basis to revisit the Court's ruling.

Plaintiffs respond with sleight of hand. Quoting the express preemption provision, they say: "'This exercise of the Board's authority preempts any state law purporting to limit or affect' federal-credit-union activities that fall within [the] sphere of exclusive NCUA power." ECF 230 at 6. But plaintiffs' summary of what follows the quoted language isn't accurate: in fact, what comes next is the list of specific subjects that NCUA thinks state laws cannot "limit or affect." 91 Fed. Reg. at 34,732. And again, this list doesn't include the Interchange Fee Prohibition.

Plaintiffs say that's no problem: "the NCUA emphasized that the list is 'not intended to be exhaustive.'" ECF 230 at 6 (quoting 91 Fed. Reg. at 34,726). But this caveat appears only in

4

NCUA's explanation for the rule; it does not appear in the express preemption provision itself. To be sure, NCUA's interpretation of its own regulation *might* be entitled to *some* deference if the regulation was "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019). But there is nothing ambiguous about NCUA's express preemption provision (and plaintiffs don't even attempt to argue otherwise).

Besides, NCUA has no authority to preempt the Interchange Fee Prohibition (or, for that matter, any other state law). ECF 229 at 6-9. Tellingly, plaintiffs try to dodge the question. They begin by correctly observing that an "'agency *acting within the scope of its congressionally delegated authority* may pre-empt state regulation.'" ECF 230 at 5 (emphasis added); *but see Monsanto Company v. Durnell*, No. 24-1068, 2026 WL 1825691, at *14 (U.S. June 25, 2026) (Thomas, J., concurring) ("Administrative action appears difficult to fit under the Supremacy Clause."). In the next sentence, however, plaintiffs jump immediately to contending that "NCUA has exercised that authority to expressly preempt" certain state laws. ECF 230 at 5. But does NCUA *have* any congressionally delegated authority to exercise here? Although the Court directed the parties to brief "threshold issues" in their initial filings, ECF 228, plaintiffs are silent. This should tell the Court all it needs to know about NCUA's authority (or lack thereof).

## III. The Interchange Fee Prohibition does not conflict with federal law.

In the alternative, plaintiffs argue that the circumstances surrounding NCUA's rule are materially identical to those surrounding OCC's rule—so the Court should apply to federal credit unions the same preemption analysis that it just applied to national banks. ECF 230 at 7-9. The logic goes like this: Both rules "reaffirm" that regulated entities may receive interchange fees. *Id.* The Interchange Fee Prohibition "deprive[s]" both federal credit unions and national banks "of the flexibility that [these] federal regulations provide." *Id.* at 8. So if the state law is preempted

5

as to national banks, it must also be preempted as to federal credit unions. *Id.* at 9.

The first problem with this argument is that, as plaintiffs acknowledge, the Court has held that Congress intended to apply different preemption standards to national banks and federal credit unions. ECF 179 at 32-33. Of course, NCUA's rule cannot (and does not purport to) alter this conclusion. Nor do any of the cases plaintiffs cite in their initial filing. ECF 230 at 8. They selectively quote from *National Bank v. Commonwealth*, 76 U.S. 353, 361 (1869), which in fact says basically the opposite of what plaintiffs claim: "it certainly cannot be maintained that banks or other corporations or instrumentalities of the government are to be wholly withdrawn from the operation of State legislation." As for *Starr International Co. v. Federal Reserve Bank of New York*, 906 F. Supp. 2d 202, 236 (S.D.N.Y. 2012), the case applies ordinary conflict preemption principles to determine whether state law would "frustrate, conflict with, burden, or impede [the Federal Reserve] in the discharge of its significant statutory responsibilities." Likewise, *Osei-Bonsu v. Federal Home Loan Bank of New York*, 726 F. Supp. 95, 98 (S.D.N.Y. 1989), holds that a federal statute authorizing Federal Home Loan Banks "to 'discharge at pleasure' their employees" means that a state agency cannot hear a former employee's discrimination claim. None of these cases support plaintiffs' argument that federal credit unions enjoy "the robust federal-instrumentality preemption that *Barnett Bank* applies to national banks." ECF 230 at 8.

Plaintiffs also insist that the Interchange Fee Prohibition is preempted under ordinary conflict preemption principles because it stands as "'an obstacle to the accomplishment and execution of the full purposes and objectives' of federal credit unions' power to charge interchange fees." ECF 230 at 9 (quoting ECF 223 at 24). As a group of amici led by the Illinois Retail Merchants Association correctly points out, however, the interchange fees regulated by state law are *not* authorized by NCUA's rule. ECF 231 at 7-8. Why? Because, as provided in new

6

12 C.F.R. § 701.5(c)(3)(i), federal credit unions may receive interchange fees only if those fees are "arrived at by each Federal credit union on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other financial institutions or their officers." 91 Fed. Reg. at 34,732-33.

The problem for plaintiffs is that "[i]nterchange fees in the United States are *not* arrived at on a competitive basis." ECF 231 at 7; *see* ECF 223 at 10 (similar requirement in OCC's rule "that each bank arrive at its fees on a competitive basis" is "not a descriptor fit for the current payment ecosystem"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223, 228 (2d Cir. 2016). "In other words, while the revised regulations purport to authorize interchange fees set by third parties, they *prohibit* interchange fees that are not the product of competition between financial institutions (including ones set by third parties)." ECF 231 at 8. There is no "clear and substantial federal interest[ ]" in allowing federal credit unions to engage in activity that federal law forbids. *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020). So conflict preemption does not apply.

On top of this, plaintiffs have not established any conflict even under their expansive view of federal credit unions' powers. Some "overlap" between state and federal law "does not even begin to make a case for conflict preemption," *Kansas*, 589 U.S. at 211; "mere differences between state and federal regulation of the same subject are not conclusive" either, *MITE Corp. v. Dixon*, 633 F.2d 486, 493 (7th Cir. 1980). Rather, as relevant here, plaintiffs "must *show* that applying the [Interchange Fee Prohibition] would do 'major damage' to clear and substantial federal interests." *C.Y. Wholesale*, 965 F.3d at 547 (emphasis added).

So what have plaintiffs shown? Their argument is that losing out on (a meager portion of) interchange fees "*may well* drive credit unions out of the card services market, frustrating

[Congress's] purpose to make credit 'available to people of small means.'" ECF 125 at 28 (emphasis added). As plaintiffs' caveat concedes, their evidence is anecdotal and speculative. ECF 229 at 9; *see Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982) ("*potential* conflict is insufficient to warrant the pre-emption of [a] state statute") (emphasis added). On the other hand, "[a]s amici have explained, the modest reduction in interchange fees would still enable card issuers to profit handsomely off their card business." ECF 231 at 10.

Regardless, the *only* evidence that plaintiffs have submitted are declarations supporting their preliminary injunction motion filed almost two years ago. Since then, the Interchange Fee Prohibition (which was never enjoined as to federal credit unions) has twice come *very* close to going into effect. If there was a true conflict, federal credit unions would have taken additional and concrete steps toward eliminating their card programs. Plaintiffs "easily could have presented such information" through updated declarations. *United States v. Illinois*, 795 F. Supp. 3d 1057, 1072 (N.D. Ill. 2025). They have not done so. Their silence speaks volumes.

## CONCLUSION

Plaintiffs have not established that NCUA's rule preempts the Interchange Fee Prohibition. The Court should deny their motion to reconsider, ECF 226.

Dated: June 29, 2026

Respectfully submitted,

/s/ Darren Kinkead
R. Douglas Rees
Alex Hemmer
Darren Kinkead
Office of the Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov

8