**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

ILLINOIS BANKERS ASSOCIATION,
AMERICAN BANKERS ASSOCIATION,
AMERICA'S CREDIT UNIONS, and
ILLINOIS CREDIT UNION LEAGUE,

*Plaintiffs*,

v.

KWAME RAOUL, in his official capacity as
Illinois Attorney General,

*Defendant*.

Case No. 1:24-cv-07307

Hon. Virginia M. Kendall

**PLAINTIFFS' RESPONSE BRIEF IN SUPPORT OF**
**MOTION FOR PARTIAL RECONSIDERATION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     THE RULE PREEMPTS THE INTERCHANGE FEE PROHIBITION. ......................... 2

II.    THE ATTORNEY GENERAL'S CHALLENGES TO THE NCUA RULE FAIL. ......... 3

     A.     The Good-Cause Argument is Not Properly Presented in this Case, and It Is Meritless to Boot. ................................................................................................ 3

     B.     The Interchange Fee Prohibition Conflicts with Federal Credit Unions' Power to Charge Interchange Fees. ....................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Fed'n of Gov't Emps. v. Block*,
    655 F.2d 1153 (D.C. Cir. 1981)..................................................................................6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)..................................................................................................5

*City of New York v. FCC*,
    486 U.S. 57 (1988)................................................................................................7, 8

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982)...........................................................................................3, 7, 8

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)...................................................................................................3

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020)..................................................................................................5

*Lloyd v. Ill. Reg'l Transp. Auth.*,
    548 F. Supp. 575 (N.D. Ill. 1982) ...........................................................................4

*Time Warner Cable v. Doyle*,
    66 F.3d 867 (7th Cir. 1995) ..................................................................................7, 8

STATUTES

12 U.S.C. § 25b.................................................................................................................7

12 U.S.C. § 1757..............................................................................................................8

12 U.S.C. § 1766..............................................................................................................7

REGULATIONS

12 C.F.R. § 701.5 .............................................................................................................2

91 Fed. Reg. 34,725 ................................................................................... *passim*

**INTRODUCTION**

As this Court recognized in its February 2026 ruling, the Illinois Interchange Fee Prohibition Act ("IFPA") poses a serious—perhaps existential—threat to financial institutions' ability to provide credit and debit cards. So after the Court interpreted then-existing federal regulations not to preempt the IFPA's Interchange Fee Prohibition, the agencies that charter and regulate federal financial institutions amended their regulations to make clear that they do. This Court then held that the amendments promulgated by the Office of the Comptroller of the Currency ("OCC") accomplished their goal: the Interchange Fee Prohibition is preempted as to national banks and Federal savings associations. The National Credit Union Administration ("NCUA") has now made similar amendments, so the same result should follow as to federal credit unions.

The Attorney General and his *amici* only briefly address whether the NCUA's new regulation preempts the Interchange Fee Prohibition. The Attorney General asserts that the rule's changes to the NCUA's express-preemption regulation somehow failed to preempt the specific state law that the agency promulgated the rule to address, while his *amici* claim that the power to charge interchange fees at third-party default rates does not actually include the most common third-party rates in the current market. Neither argument persuades.

Instead of focusing on the preemption question, the Attorney General and his *amici* again largely challenge the validity of the interim final rule itself, arguing principally that the agency lacked good cause to promulgate it. But this Court has held that such arguments belong in an APA suit, not this case, and that any inquiry into good cause will be functionally moot in any event. The Attorney General fails to acknowledge those holdings, and his *amici* offer no reason to reconsider them. The Attorney General also questions the NCUA's power to issue regulations that have preemptive force, arguing that Congress needed to expressly authorize the NCUA to issue regulations with preemptive force. But the Supreme Court rejected that argument forty years ago.

1

**ARGUMENT**

**I.     THE RULE PREEMPTS THE INTERCHANGE FEE PROHIBITION.**

The rule preempts the Interchange Fee Prohibition in two ways.  First, it amends the NCUA's express-preemption regulation to clarify that the agency's exclusive authority over the terms and conditions of federal credit unions' loans applies to fees charged to non-members. Second, it expressly recognizes federal credit unions' power to receive interchange fees through third parties at default rates set by those third parties, a power with which the Interchange Fee Prohibition conflicts.  The Attorney General's and his *amici*'s contrary arguments fail.

**A.** The Attorney General misunderstands the express-preemption regulation in arguing that the NCUA failed, in amending it, to preempt the state law that motivated the amendment.  As the NCUA made clear, the "list of areas that are specifically preempted … is not intended to be exhaustive."  91 Fed. Reg. 34,725, 34,726/3 (June 9, 2026).  The key point is the recognition of the agency's "exclusive authority … to regulate the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit."  *Id.* at 34,732/1 (12 C.F.R. § 701.5(b)).  By removing "to members" from that clause, the NCUA clarified that 12 C.F.R. § 701.5 preempts state laws regulating fees—like the interchange fees recognized in § 701.5(c)—charged to non-members.  91 Fed. Reg. at 34,727/3.  The NCUA did not need to also overhaul the ensuing, non-exhaustive examples to make clear yet again the scope of its exclusive authority.

**B.** In response to the clear conflict between the Interchange Fee Prohibition and federal credit unions' power to receive interchange fees "indirectly, through intermediaries" or "payment networks" at rates "set by or in consultation with third parties," *id.* at 34,732-33 (12 C.F.R. § 701.5(c)), the Illinois Retail Merchants Association ("IRMA") trots out the same tired argument that interchange fees are not covered by the amended rule because IRMA thinks they are not set "on a competitive basis," Dkt. No. 231 at 7 (quoting 12 C.F.R. § 701.5(c)(3)(i)).  It accuses the

2

Court of missing this point with respect to the OCC's rule, but IRMA contends only that the fees are not competitive because they are set by a third party. *Id.* Yet as this Court explained, the OCC rule expressly accounted "for letting third parties themselves set the fees." Dkt. No. 223 at 21. So the rule empowered banks to rely on network-set fees, "tee[ing] up an express conflict with the IFPA." *Id.* The text of the NCUA regulation is identical in that regard, so it grants federal credit unions the same power and creates the same conflict.

**C.** Finally, IRMA briefly argues (Dkt. No. 231 at 10) that there is no conflict between the federal regulation's express recognition of federal credit unions' power to receive interchange fees and a state law that the evidence before the Court showed "will drive institutions out of the market." *See* Dkt. No. 179 at 14. But such a law is obviously "an obstacle to the accomplishment and execution of the full purposes and objectives" of the FCUA and its implementing regulations. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 156 (1982) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

## II. THE ATTORNEY GENERAL'S CHALLENGES TO THE NCUA RULE FAIL.

Perhaps recognizing that the NCUA's rule did not fail to preempt the state law that was the impetus for its promulgation, the Attorney General and his *amici* devote most of their briefs to challenging the rule's validity. Both attempt to challenge the agency's good-cause determination. The Attorney General also argues that the NCUA's regulations cannot have preemptive force because Congress did not specifically say that they do. And IRMA claims that the FCUA does not authorize federal credit unions to charge interchange fees. None of their arguments works.

### A. The Good-Cause Argument is Not Properly Presented in this Case, and It Is Meritless to Boot.

As this Court held with respect to the OCC rule, the Attorney General's and his *amici*'s argument that the NCUA rule was promulgated without good cause is not properly presented in

3

this case.  It is an APA challenge that belongs in an APA suit.  And it would be a functionally moot and meritless APA challenge at that.  This Court should reject it.

**1.** When briefing the significance of the OCC's interim final rule, the Attorney General argued at length that the Seventh Circuit and this Court should disregard the rule on the ground that the OCC did not have good cause to forgo notice and comment.  7th Cir. No. 26-1354, Doc. No. 94 at 3-7; Dkt. No. 217 at 5.  This Court, however, concluded that the Attorney General's good-cause argument was not properly before it.  As the Court explained, it "cannot grant an APA claim that does not exist, nor any other claim unpleaded," and it "cannot invalidate the agency's actions under the arbitrary and capricious standard nor any other term under the APA, despite the contentions of the Attorney General to the contrary."  Dkt. No. 223 at 8; *see also id.* at 19-20.

The Attorney General now again asks this Court to invalidate an agency rule under the APA.  Dkt. No. 229 at 4-5.  Yet he does not even acknowledge this Court's ruling that the good-cause issue is not properly presented here, let alone provide a reason to reconsider that decision.[1]  The same analysis forecloses the Attorney General's good-cause argument here.

And while IRMA at least acknowledges that this Court's holdings foreclose its good-cause arguments, Dkt. No. 231 at 1, its challenge to that analysis is unpersuasive.  IRMA still "does not meaningfully contend with the non-party barrier and the lack of APA claim."  Dkt. No. 223 at 8 n.8.  And it ignores a significant reason that an APA claim, and the agency's participation as a party, is necessary to challenge an agency's compliance with the APA: Review of an agency's reasoning and process depends on the administrative record.  *See Lloyd v. Ill. Reg'l Transp. Auth.,*

---

[1] He does respond to the OCC's earlier argument that parties can never collaterally attack agency rules.  Dkt. No. 229 at 9-10.  But that is an entirely different point, as this Court recognized by rejecting the OCC's jurisdictional argument and nevertheless concluding that the Attorney General's APA arguments were not properly presented.  Dkt. No. 223 at 7-8.

548 F. Supp. 575, 589 (N.D. Ill. 1982) ("The Supreme Court has clearly held that the 'whole' administrative record compiled by the agency is required as a basis for review under § 706 of the [APA]." (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971))).

Thus when IRMA argues at length that this Court can resolve a challenge to the substantive authority for a regulation, it is making an irrelevant (and uncontested) point. *See* Dkt. No. 231 at 1-4. As this Court's opinion recognized, whether "Congress ha[s] given [an agency] the statutory authority to issue the preemptive regulation at hand" is an entirely separate question from the issues "implicated by the APA." Dkt. No. 223 at 9. IRMA tries to blur that line, arguing that a rule promulgated without notice and comment "is no action at all." Dkt. No. 231 at 5. But the argument that the rule is improper because the NCUA's rationale for invoking the good-cause exception was insufficient is just a run-of-the-mill (and record-dependent) APA objection. IRMA could just as easily say that an action taken without adequate explanation is "no action at all" because agencies cannot act arbitrarily and capriciously. But such arguments are too clever by half. The good-cause argument is a procedural APA claim, not a question of substantive agency authority.

**2.** Further, as with the OCC rule, good cause is a "functionally moot" point because the NCUA has requested comments that will inform a final rule. Dkt. No. 223 at 19; 91 Fed. Reg. at 34,729/1; *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 686 n.14 (2020) ("Because we conclude that the IFRs' request for comment satisfies the APA's rulemaking requirements, we need not reach respondents' additional argument that the Departments lacked good cause to promulgate the 2017 IFRs."). That is especially true because the extension of the IFPA's effective date means that a final rule will almost certainly issue before the IFPA takes effect. The Attorney General ignores this barrier to his good-cause argument, and IRMA offers no good reason for this Court to reconsider. Although IRMA quibbles with this

Court's discussion of *Little Sisters of the Poor*, Dkt. No. 231 at 5-6, it ignores the "functional[]" thrust of this Court's analysis, Dkt. No. 223 at 19—there is no reason to invite a collateral attack on an agency rule based on an effectively moot procedural argument.

**3.** Finally, the Attorney General's good-cause argument would fail on the merits even if he could raise it here. This Court has recognized the evidence before it that the IFPA requires "extraordinarily expensive," "system-wide modifications" that would take "months if not years to achieve," if they can be achieved at all. Dkt. No. 179 at 14. The NCUA likewise recognized "the complex and potentially unworkable nature of the interchange fee prohibition" and its catastrophic effects on federal credit unions—especially if it placed federal credit unions at a competitive disadvantage compared to national banks and Federal savings associations. 91 Fed. Reg. at 34,729/3. Averting that catastrophe provided good cause to delay notice and comment until after issuance of the final rule. *See Am. Fed'n of Gov't Emps. v. Block*, 655 F.2d 1153, 1157 (D.C. Cir. 1981) (the threat of "confusion among" government inspectors and consequent "economic harm and disruption" to certain poultry-processing facilities was good cause). It was also immaterial that the Illinois legislature had passed an extension to the IFPA's effective date just before the rule issued. That extension still awaited the governor's signature, so at the time the NCUA acted, federal credit unions stared down an impending deadline because the "IFPA [was] (currently still) set to take effect" imminently. *See* Dkt. No. 223 at 11.

> **B.** **The Interchange Fee Prohibition Conflicts with Federal Credit Unions' Power to Charge Interchange Fees.**

The Attorney General and IRMA also challenge the NCUA's power to issue the rule, each on separate grounds. The Attorney General argues that, because Congress did not expressly "authorize NCUA to preempt state laws," the Court should ignore the rule. Dkt. No. 229 at 6. That argument flies in the face of long-settled precedent making clear that agency regulations have

6

the force of law, and therefore preempt contrary state law, whether or not Congress has specifically said so. IRMA makes the more audacious argument that federal credit unions lack the power to charge fees to non-members at all. Dkt. No. 231 at 6. But the FCUA's grant of incidental powers provides ample support for the fee power that the NCUA's rule recognizes.[2]

    **1.** Precedent squarely forecloses the Attorney General's argument that the NCUA lacked authority to promulgate a rule that preempts state law. The NCUA has broad authority to oversee federal credit unions and "prescribe rules and regulations for the administration of" the FCUA. 12 U.S.C. § 1766(a). To dismiss that expansive authority as insufficient, the Attorney General seems to argue that express-preemption regulations require express authorization from Congress. Dkt. No. 229 at 6-7. He is wrong. The preemptive force of agency regulations "does not depend on express congressional authorization to displace state law." *City of New York v. FCC*, 486 U.S. 57, 64 (1988) (quoting *Fidelity*, 458 U.S. at 154). Instead, "[t]he statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." *Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995) (quoting *City of New York*, 486 U.S. at 64). Agencies can also promulgate regulations that expressly preempt certain categories of state laws—"in proper circumstances the agency may determine that its authority is exclusive and pre-empts any state efforts to regulate in the forbidden area." *Id.* at 875-76 (quoting *City of New York*, 486 U.S. at 64).

    *Fidelity* is particularly illustrative. There, the Federal Home Loan Bank Board, based on its power to "provide for the organization, incorporation, examination, operation, and regulation of … 'Federal Savings and Loan Associations'" "under such rules and regulations as it may

---

[2] The Attorney General and IRMA both correctly make no argument that 12 U.S.C. § 25b(h)(2), which has no applicability to credit unions, limits the scope of FCUA preemption.

prescribe," issued a regulation that preempted state restrictions on the use of due-on-sale clauses. 458 U.S. at 145. The Supreme Court held that that grant of power authorized preemption. *Id.* at 167. Similarly, in *City of New York*, the FCC's power to "[m]ake such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of" the communications laws provided ample authority for rules expressly preempting "state and local technical standards." 486 U.S. at 66-67. Those cases foreclose the Attorney General's argument. Neither involved an express grant of preemptive authority; both blessed preemption regulations that relied on the same kind of general authority the NCUA wields.

Here, the NCUA determined that its authority over "the rates, terms of repayment and other conditions of Federal credit union loans and lines of credit (including credit cards)," 91 Fed. Reg. at 34,732/1, "is exclusive and pre-empts any state efforts to regulate in the forbidden area," *see Time Warner Cable*, 66 F.3d at 876 (quoting *City of New York*, 486 U.S. at 64). That determination is squarely within the scope of its power to administer the NCUA, so it is valid.

**2.** Rather than question the NCUA's power to preempt, IRMA disputes the NCUA's recognition of federal credit unions' power to receive interchange fees because, it says, the FCUA does not allow federal credit unions to charge fees to non-members at all. Dkt. No. 231 at 6. But 12 U.S.C. § 1757(5) allows a federal credit union to "extend lines of credit to its members," and § 1757(17) lets it "exercise such incidental powers as shall be necessary or requisite to enable it to carry on effectively the business for which it is incorporated." As the NCUA recognized, charging interchange fees that allow federal credit unions to provide lines of credit and share draft accounts is an incidental power necessary to effectively carry on their business. 91 Fed. Reg. at 34,726. In short, the mere fact that the FCUA allows credit unions to make loans specifically to members in no way limits their ability to charge fees to non-members in order to effectuate that power.

8

Dated:        June 29, 2026                          Respectfully submitted,

                                                     /s/ *Bethany K. Biesenthal*

Carolyn Settanni (*pro hac vice*)                    Bethany K. Biesenthal (N.D. Ill. 6282529)
ILLINOIS BANKERS ASSOCIATION                         Shea F. Spreyer (N.D. Ill. 6335869)
194 East Delaware Place, Ste. 500                    JONES DAY
Chicago, IL 60611                                    110 North Wacker Drive, Suite 4800
Telephone: +1.312.453.0167                           Chicago, IL 60606
csettanni@illinois.bank                              Telephone: +1.312.782.3939
                                                     Facsimile: +1.312.782.8585
                                                     bbiesenthal@jonesday.com
Thomas Pinder (*pro hac vice*)                       sfspreyer@jonesday.com
Andrew Doersam (*pro hac vice*)
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave NW                             Charlotte H. Taylor (*pro hac vice*)
Washington, DC 20036                                 JONES DAY
Telephone: +1.202.663.5035                           51 Louisiana Avenue, NW
TPinder@aba.com                                      Washington, DC 20001
adoersam@aba.com                                     Telephone: +1.202.879.3939
                                                     Facsimile: +1.202.626.1700
                                                     ctaylor@jonesday.com
Ann C. Petros (*pro hac vice*)
AMERICA'S CREDIT UNIONS
4703 Madison Yards Way, Suite 300                    Matthew J. Rubenstein (*pro hac vice*)
Madison, WI 53705                                    JONES DAY
Telephone: +1.703.581.4254                           90 South Seventh Street, Suite 4950
APetros@americascreditunions.org                     Minneapolis, MN 55402
                                                     Telephone: +1.612.217.8800
                                                     Facsimile: +1.844.345.3178
Ashley Niebur Sharp (*pro hac vice*)                 mrubenstein@jonesday.com
ILLINOIS CREDIT UNION LEAGUE
225 South College, Suite 200
Springfield, Illinois 62704                          Boris Bershteyn (*pro hac vice*)
Telephone: +1.217.372.7555                           Kamali P. Willett (*pro hac vice*)
Ashley.Sharp@ICUL.com                                Sam Auld (*pro hac vice*)
                                                     SKADDEN, ARPS, SLATE,
                                                       MEAGHER & FLOM LLP
                                                     One Manhattan West
                                                     New York, NY 10001
                                                     Telephone: (212) 735-3000
                                                     Facsimile:  (212) 735-2000
                                                     boris.bershteyn@skadden.com
                                                     kamali.willett@skadden.com
                                                     sam.auld@skadden.com

                                                     Amy Van Gelder (N.D. Ill. 6279958)
                                                     SKADDEN, ARPS, SLATE,
                                                       MEAGHER & FLOM LLP
                                                     320 South Canal Street

9

Chicago, IL 60606
amy.vangelder@skadden.com

*Attorneys for Illinois Bankers Association,*
*American Bankers Association, America's*
*Credit Unions, and Illinois Credit Union*
*League*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 29, 2026, a copy of the foregoing was filed using the CM/ECF system.

/s/ *Bethany K. Biesenthal*

*Attorney for Illinois Bankers Association, American Bankers Association, America's Credit Unions, and Illinois Credit Union League*

11